IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

─────────────────────────────────────────

ANDREW PRATT,

                    Plaintiff,

                                     Civil Action No.
          vs.                          6:08-CV-1180 (DNH/DEP)

MICHAEL F. HOGAN, Commissioner,
New York State Office of Mental Health, *et al.*,

                    Defendants.

─────────────────────────────────────────

APPEARANCES:                        OF COUNSEL:

FOR PLAINTIFF:

ANDREW PRATT, *Pro Se*
18859-604
CNY Psychiatric Center
P.O. Box 300
Marcy, New York 13403

FOR DEFENDANTS:

HON. ANDREW M. CUOMO         MICHAEL G. McCARTIN, ESQ.
Office of Attorney General        Assistant Attorney General
State of New York
The Capitol
Litigation Bureau
Albany, NY 12224-0341

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

REPORT AND RECOMMENDATION

Plaintiff Andrew Pratt, a convicted sex offender who was civilly confined following completion of his prison sentence and is now undergoing a regimen of sex offender treatment, has commenced this action pursuant to 42 U.S.C. § 1983 against the Commissioner of the New York State Office of Mental Health ("OMH") and four other OMH employees, alleging deprivation of his civil rights.  In his complaint – the second filed by him attacking the Sex Offender Treatment Program ("SOTP") administered by the OMH – Pratt asserts that the requirement, as part of the treatment program, that he prepare and present both an offense history and an autobiography including information regarding prior charged and uncharged sex crimes violates his Fifth Amendment right against self-incrimination.[1]  Plaintiff's complaint seeks both monetary and injunctive relief.

In response to plaintiff's complaint, defendants have moved seeking

---

[1]     In the prior action, Pratt argued that materials included within the SOTP are built upon religious principles, thereby exposing him to beliefs which are inconsistent with his religion, in violation of his First Amendment, and further that the requirement that he submit to polygraph and penile plethysmograph testing violates his Fifth Amendment right against self-incrimination.  *See Pratt v. Hogan*, No. 6:08-CV-1003 (DNH/DEP), Complaint (Dkt. No. 1).  Those claims were rejected in a decision issued by District Judge David N. Hurd on July 6, 2009.  *See Pratt v. Hogan,* 631 F. Supp.2d 192 (N.D.N.Y. 2009).

its dismissal, arguing that Pratt has failed to plead a plausible Fifth

Amendment claim since he does not allege that information extracted from

him under threat of compulsion has been used against him in a criminal

proceeding.  Having carefully considered defendants' motion as well as

plaintiff's arguments in response, I recommend that it be granted.

I.      BACKGROUND[2]

        Plaintiff is a convicted sex offender who, following completion of his

criminal sentence, was ordered civilly confined in the Central New York

Psychiatric Center ("CNYPC" or "Center"), a facility located in Marcy, New

York, and operated under the auspices of the OMH.  *Pratt,* 631 F.

Supp.2d at 194.  Pratt's confinement was ordered pursuant to New York

Mental Hygiene Law Article 10 following a jury trial and the jury's finding,

by clear and convincing evidence, that he possesses a mental abnormality

---

[2]      In light of the procedural posture of this case, my recitation of the relevant facts
is drawn principally from plaintiff's complaint, the contents of which have been
accepted as true for purposes of the pending motion.  *See Erickson v. Pardus,* 551
U.S. 89, 127 S. Ct. 2197, 2200 (2007) (citing *Bell Atlantic Corp. v. Twombly,* 550 U.S.
544, 127 S. Ct. 1955, 1965 (2007)); *see also Cooper v. Pate*, 378 U.S. 546, 546, 84 S.
Ct. 1733, 1734 (1964).  The following background information has also been derived,
in part, from relevant judicial decisions, which are properly considered when deciding a
motion to dismiss.  *Briggs v. Warfield*, No. 2:06-CV-227, 2007 WL 4268918, at * 3 (D.
Vt. Nov. 30, 2007) (citing and quoting *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d
67, 75 (2d Cir. 1998) ("It is well established that a district court may rely on matters of
public record in deciding a motion to dismiss under Rule 12(b)(6) . . . .") (other citations
omitted).

and a condition predisposing him to commit sex offenses.  *Id.*; *see also*
Defendants' Memorandum (Dkt. No. 11) Appendix A (Order dated June
11, 2008, issued by Acting Supreme Court Justice Harry W. Seibert in
*State of New York v. Andrew M. Pratt,* No. 2007-2835, New York State
Supreme Court, Saratoga County).

Plaintiff's treatment at the CNYPC is being administered pursuant to
a written SOTP protocol that is broken down into four distinct phases.
Complaint (Dkt. No. 1) Exh. A.  As part of Phase II of the SOTP, entitled
"Acquisition and Practice," CNYPC inmate participants are required to
prepare and present both an offense history, providing detailed
information regarding the crime for which the patient was convicted and
an autobiography.  *Id.* § 4 and Exh. A.  That requirement was added into
the SOTP by CNYPC Executive Director Donald Sawyer in or about
August of 2008.  *Id.*

Consistent with these Phase II SOTP requirements, plaintiff was
advised on or about October 9, 2008 by defendant Valerie Colasante, an
assistant psychologist at the facility, that he and others in his therapy
group would be required to answer direct questions concerning
information appearing in his autobiography, including regarding uncharged

4

crimes or dismissed charges.  Complaint (Dkt. No. 1) § 4.  A week later, on or about October 16, 2008, defendant Terri Maxymillian, the SOTP Director at the Center, ordered that plaintiff's autobiography be collected and photocopied and that copies be placed in his file for review by the New York State Attorney General.  *Id.*  On October 22, 2008, apparently based upon his refusal to comply with these directives, plaintiff was informed by defendant Colasante that he would not be likely to progress through the treatment program toward release until he fulfilled those requirements.  *Id.*

## II.    <u>PROCEDURAL HISTORY</u>

Plaintiff commenced this action on November 5, 2008.  Dkt. No. 1. As defendants, plaintiff's complaint names Michael F. Hogan, Commissioner of the OMH; CNYPC SOTP Director Terri Maxymillian; Valerie Colasante, an assistant psychologist at the facility; Regina Anderson, a registered nurse and treatment team leader at the Center; and CNYPC Executive Director Donald Sawyer.  *Id.*  Plaintiff's complaint asserts three causes of action, all of which allege violation of his right against self-incrimination under the Fifth Amendment.[3]  *Id.*

---

[3]    When filed, this action received a division code designation of six, denoting a non-prisoner civil action filed in the Utica division.  While the plaintiff in this case is not

In lieu of answering, defendants have moved to dismiss plaintiff's complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Dkt. No. 11.  In their motion, defendants argue that because plaintiff has not alleged that information disclosed by him under threat of compulsion was used against him in a criminal proceeding, he has failed to assert a plausible Fifth Amendment claim.  *Id.*  Plaintiff has since responded in opposition to defendants' motion, Dkt. No. 13, prompting the filing of a reply memorandum by defendants on April 23, 2009, Dkt. No. 14, and a surreply by plaintiff on May 6, 2009.  Dkt. No. 16.

Defendants' motion, which is now fully briefed and ripe for determination, has been referred to me for the issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c).  *See* Fed. R. Civ. P. 72(b).

III.   DISCUSSION

A.   Dismissal Standard

-----

a prisoner in the traditional sense, his circumstances are closely akin to those experienced by prisoners within the custody of the New York State Department of Correctional Services, whose cases are separately designated as filed within division nine, and this case lends itself well to the tracking and other procedures associated with division nine cases.  Accordingly, the clerk is hereby respectfully directed to change the designation in this action to reflect a division nine assignment, in the place of the current division six designation.

Defendants' motion is brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  A motion to dismiss a complaint brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure calls upon a court to gauge the facial sufficiency of that pleading, utilizing as a backdrop a pleading standard which, though unexacting in its requirements, "demands more than an unadorned, the-defendant-unlawfully-harmed me accusation" in order to withstand scrutiny.  *Ashcroft v. Iqbal*, ___ U.S. ___, ___, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 555, 127 S. Ct. 1955, (2007)). Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  *Id.*  While modest in its requirement, that rule commands that a complaint contain more than mere legal conclusions; "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft,* 129 S.Ct. at 1950.

To withstand a motion to dismiss, a complaint must plead sufficient facts which, when accepted as true, state a claim which is plausible on its face.  *Ruotolo v. City of New York*, 514 F.3d 184, 188 (2d Cir. 2008)

(citing *Twombly*, 550 U.S. at 570, 127 S. Ct. at 1974).  As the Second

Circuit has observed, "[w]hile *Twombly* does not require heightened fact

pleading of specifics, it does require enough facts to 'nudge [plaintiffs']

claims across the line from conceivable to plausible.'" *In re Elevator*

*Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) (quoting *Twombly*, 550 U.S.

at 570 127 S. Ct. at 1974).

     B.    <u>Plaintiff's Fifth Amendment Claim</u>

Defendants' motion seeks dismissal of plaintiff's Fifth Amendment

causes of action, the only claims asserted in this matter.  In support of

their motion, defendants argue that the required disclosure of

incriminating information regarding the offense for which he was convicted

as well as other potential uncharged crimes for use in a civil setting to the

treat the plaintiff, as a sex offender, does not violate his Fifth Amendment

right against self-incrimination.

The Fifth Amendment, which applies to the states through the

Fourteenth Amendment, *see Malloy v. Hogan*, 378 U.S. 1, 84 S. Ct. 1489

(1964), insures that no person "shall be compelled in any criminal case to

be a witness against himself.  U.S. Const. amend. V.  That provision

protects persons against being compelled in a criminal case to give self-

incriminating testimony.  *McKune v. Lile*, 536 U.S. 24, 35-36, 122, S. Ct. 2017, 2026 (2002); *Higazy v. Templeton,* 505 F.3d 161, 171 (2d Cir. 2007).   As the Supreme Court has noted, "[t]he privilege reflects a complex of our fundamental values and aspirations, and marks an important advance of the development of our liberty."  *Kastrigar v. United States,* 406 U.S. 441, 444,  92 S. Ct. 1653, 1656 (1972).  While speaking in terms of criminal cases, the Fifth Amendment, offers a privilege that "can be asserted in any proceeding, civil or criminal, administrative or judicial investigatory or adjudicatory . . .." *Id.* at 444-45, 92 S. Ct. at 1656 (1972) (footnote omitted).

The first question presented in connection with plaintiff's Fifth Amendment claim is whether by virtue of the SOTP's autobiography requirement he has been compelled by government workers to give incriminating information.  "The test for whether a statement was improperly obtained by coercion is 'determined by the totality of the circumstances'".  *Higazy,* 505 F.3d at 170 (citing and quoting *Deshawne By Charlotte E. v. Safir*, 156 F.3d 340, 346 (2d Cir. 1998)).

The element of compulsion, in the context of the Fifth Amendment, was addressed by the Supreme Court in *McKune*, 536 U.S. at 49, 122 S.

9

Ct. at 2032-2033 (O'Connor, J., concurring).  *McKune* involved a Kansas prison inmate who, as a participant in a sex abuse treatment program, was required to discuss and accept responsibility not only for the crime of conviction, but also to complete a sexual history form detailing all prior sexual activities.  *McKune,* 536 U.S. at 29-32, 122 S. Ct. at 2022-2024. The consequences for refusing to participate in the treatment program included curtailment of various privileges and a transfer into a more secure facility, with more limited opportunities for movement.  *Id.* at 30-31, 122 S. Ct. at 2022-2023.  A plurality of the Court concluded that the plaintiff in that case had failed to demonstrate a sufficient degree of constitutionally significant compulsion, although no one opinion garnered a majority.   Focusing on the compulsion element of the self-incrimination clause Justice Kennedy, who delivered an opinion in which three others joined, concluded that the limitations faced for failing to cooperate were similar to that which other prison inmates could also be exposed and did not rise to a level sufficient to constitute undue compulsion and thus run afoul of the Fifth Amendment.[4]  *McKune,* 536 U.S. at 41-47, 122 S. Ct.

---

[4]   In its decision in *McKune*, the Supreme Court took notice of the serious threat presented by sex offenders released into the community and the high rate of recidivism, noting that "[w]hen convicted sex offenders reenter society, they are much more likely than any other type of offender to be re-arrested for a new rape or sexual

2017.

In *Edwards v. Ladlair*, this court went one step further, concluding the requirement that the petitioner in that habeas case disclose prior uncharged sex offenses during the course of a prison sex offender treatment program did not violate his Fifth Amendment right against self-incrimination, since the sanction for refusing to participate in the program was the denial of good time credit allowances, a discretionary privilege, and under *McKune* the denial of prison privileges does not suffice to establish the requisite degree of compulsion for purposes of the Fifth Amendment.  No. 9:07-CV-0059-JKS, 2008 WL 3156214, at *6 (N.D.N.Y. Aug. 4, 2008), *aff'd*, 2010 WL 292749 (2d Cir. Jan. 26, 2010).[5]  As acknowledged by Judge Singleton in *Edwards*, the *McKune* court noted that the decision not to participate in the Kansas sex offender treatment did not affect the respondent's eligibility for good time credits or parole.

---

assault[,]" adding that "[s]tates thus have a vital interest in rehabilitating convicted sex offenders.  *McKune,* 536 U.S. at 33, 122 S. Ct. at 2024 (citations omitted).  The Court also observed in *McKune* that "[a]cceptance of responsibility is the beginning of rehabilitation," noting that the acceptance of responsibility for past offenses "gives inmates a basis to understand why they are being punished and to identify the traits that cause such a frightening and high risk of recidivism."  *Id.*, 536 U.S. at 33-34, 47, 122 S. Ct. at 2025, 2032.

[5]     Copies of all unreported decisions cited in this document have been appended for the convenience of the *pro se* plaintiff.

*Edwards*, 2008 WL 3156214, at *5 (citing *McKune*, 536 U.S. at 38, 122. S.

Ct. 2017).  *Edwards*, therefore, extended the reasoning of *McKune*,

applying it as well to circumstances in which the sanction for failure to

comply included loss of food time credits.

When addressing the compulsion element of a Fifth Amendment

claim such as that now presented,

> [t]he test, as articulated in *McKune*, depends upon
> the severity of the consequences of the choice
> made by the prisoner not to participate and discuss
> his crimes.  436 U.S. at 44-45 (plurality), 48-50
> (O'Connor, J. concurring).  Unfortunately, the
> Supreme Court has not provided a bright-line of
> demarcation above which the severity of the
> consequences constitutes compulsion.

*Edwards,* 2008 WL 3156214, at *5.  It is by now fairly well settled that

risking the loss of good time credits or jeopardizing the chance for parole,

alone, does not qualify as sufficiently compulsive to meet the test.  *See*

*Wolfe v. Pennsylvania Dep't of Corrections*, 334 F. Supp.2d 762, 771

(E.D. Pa. 2004); *see also Anisworth v. Stankley,* 371 F.3d 1, 5 (1st Cir.

2002), *cert. denied*, 538 U.S. 999, 123 S.Ct. 1908 (2003); *Searcy v.*

*Simmons*, 299 F.3d 1220, 1226 (10th Cir. 2002).  Beyond these forms of

recrimination, however, the issue becomes less clear.

In this instance, the plaintiff is a civil detainee whose liberty is being

withheld beyond the expiration of his prison sentence.  Pratt is therefore in a very different circumstance than the inmates involved in *Edwards* and *McKune*.  Although this is somewhat unclear from the scant record now before the court, it appears that in all likelihood Pratt has served all of the time imposed based upon his criminal sex conviction, and is now involuntarily committed for rehabilitation pursuant to the relatively recently enacted provisions of New York Mental Hygiene Law Article 10.  The record now before the court does not disclose what sanctions could result from plaintiff's failure to provide the requested information in connection with his SOTP.  Plausibly, however, one could imagine that it could well result in an extension of his confinement at the CNYPC.  This, then, is a very different situation than presented in *McKune, see* 536 U.S. at 38, 122 S. Ct. 2027 ("in the present case, respondent's decision not to participate in Kansas SOTP did not extend his term of incarceration"), and the potential sanction for plaintiff's refusal to incriminate himself suffices, at least at this early procedural juncture, to establish the requisite degree of compulsion necessary to support a Fifth Amendment claim.  *Decker v. Hogan,* No. 9:09-CV-0239 (TJM/GJD), 2009 WL 3165830, at *6 (N.D.N.Y. Sept. 28, 2009) (McAvoy, S.J.).

13

The more difficult question presented is whether, in being compelled by officials at the CNYPC to submit to complete an autobiography, plaintiff has been unlawfully forced to incriminate himself in violation of his right under the Fifth Amendment.  As unsettled as the controlling legal principles were after the Court's decision in *McKune*, the landscape was further obscured by the Supreme Court's later decision in *Chavez v. Martinez*, 538 U.S. 760, 123 S. Ct. 1994 (2003), another case heavily relied upon by the defendants in their motion.  That action involved a claim brought by an individual pursuant to 42 U.S.C. § 1983, arguing that his Fifth Amendment right against self-incrimination was violated when he was interrogated by the petitioner, a police patrol supervisor, even though the statements obtained through the course of that interrogation were never used against him in any criminal prosecution.  Under the circumstances, the Court found no constitutional violation, since the respondent was never forced to be a witness against himself in a criminal proceeding.  *Chavez,* 538 U.S. at 767, 123 S. Ct. 2001.

Admittedly, it is somewhat difficult to reconcile *Chavez* with some of the Court's prior decisions regarding the Fifth Amendment.  In *Kastigar*, for example, the Court noted that the privilege

> can be asserted in any proceeding, civil or criminal,
> administrative or judicial, investigatory or adjudicatory, and it
> protects against any disclosures which the witness reasonably
> believes could be used in a criminal prosecution or could lead
> to other evidence that might be so used.

406 U.S. at 444-45, 92 S. Ct. 1653 (footnotes omitted).  *Chavez,* however,

appears to stand for the proposition that while this may be true, and

*Kastigar* and other cases permit invocation of the Fifth Amendment

privilege in non-criminal settings, a violation of the right of against self-

incrimination is inchoate until a person has been actually compelled to be

a witness against himself or herself in a criminal proceeding, meaning that

his or her testimony or statements have been used in a criminal arena.

*Chavez*, 538 U.S. at 770, 123 S. Ct. 2002-2003.  Accordingly, since Pratt

has not alleged that he completed an autobiography disclosing uncharged

sex crimes, permitted it to be copied, and the autobiography was used

against him in a criminal in prosecution, his complaint fails to allege a Fifth

Amendment violation.[6]  *Fifield v. Eaton,* No. 07-CV-6521 L, 2009 WL

---

[6]    Any contention on plaintiff's part that his autobiography may be used in the
future in a criminal proceeding against him is not presently ripe for adjudication.
*Longway v. Jefferson County Bd. of Supervisors*, 24 F.3d 397, 400 (2d Cir. 1994) ("An
issue is ripe for judicial resolution only if it presents a real and substantial controversy,
not a mere hypothetical question.") (internal quotations and citation omitted).  This
decision therefore does not foreclose plaintiff from challenging the use of his
autobiography in a subsequent criminal proceeding, nor does it preclude him from
bringing a separate action under for damages 42 U.S.C. § 1983 for violating his Fifth
Amendment rights in the event that government officials attempt to use his compulsory

3429791, at *3 (W.D.N.Y. Oct. 20, 2009) (claim by a convicted sex offender that defendants required him to complete forms admitting guilt of a sex offense, leading to expulsion from sex offender treatment upon his denial, held not to give rise to a Fifth Amendment violation since plaintiff failed to allege that the defendant used or sought to use, or could have used any incriminating statement against him at a criminal proceeding."); *see also Krug v. County of Rennselaer,* 559 F. Supp.2d 223, 246 (N.D.N.Y. 2008) (statements made to law enforcement officers but never used in a criminal proceeding do not give rise to a Fifth Amendment claim) (citing, *inter alia*, *Chavez*, 538 U.S. at 766, 123 S. Ct. at 2000).

I therefore recommend dismissal of plaintiff's Fifth Amendment claim in its entirety.

IV.   SUMMARY AND RECOMMENDATION

The only claims asserted by the plaintiff in this action arise under the Fifth Amendment and are predicated upon his contention that by forcing him to prepare a summary of his criminal offense and an autobiography which potentially could detail other criminal conduct, including uncharged crimes, his right against self-incrimination has been

---

autobiography against him in a subsequent criminal proceeding.

16

violated.  Because plaintiff  has failed to allege that information gathered from him under compulsion has been used against him in a criminal proceeding, however, his complaint fails to state a plausible Fifth Amendment violation, and it is therefore subject to dismissal.  Accordingly, it is hereby respectfully

ORDERED, that the clerk shall revise the designation of No. 08-CV-1180 (DNH/DEP) to reflect a division nine case assignment; and it is further

RECOMMENDED, that defendants' motion to dismiss (Dkt. No. 11) be GRANTED, and that plaintiff's complaint be DISMISSED in all respects.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections must be filed with the Clerk of the Court within FOURTEEN days of service of this report.  FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P.  6(a), 6(d), 72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir. 1993).

It is hereby ORDERED that the clerk of the court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

Dated:     March 22, 2010
           Syracuse, NY

David E. Peebles
U.S. Magistrate Judge



Not Reported in F.Supp.2d, 2007 WL 4268918 (D.Vt.)
(Cite as: 2007 WL 4268918 (D.Vt.))

C   Only the Westlaw citation is currently available.

United States District Court,
D. Vermont.
Andrea G. BRIGGS, Plaintiff,
v.
Michael WARFIELD and Donald C. Winter,
Defendants.
**No. 2:06-CV-227.**

Nov. 30, 2007.

Andrea G. Briggs, North Troy, VT, pro se.

Thomas E. McCormick, McCormick, Fitzpatrick, Kasper & Burchard, P .C., Burlington, VT, Timothy B. Tomasi, Office of the United States Attorney, Burlington, VT, for Defendants.

OPINION AND ORDER (Papers 20, 22, 31 and 32)

WILLIAM K. SESSIONS III, Chief Judge.

**\*1** Plaintiff Andrea G. Briggs, proceeding *pro se,* claims injuries arising from exposure to chemical fumes in her workplace. At the time of the exposure, Briggs was employed by the Department of the Navy. The defendants in this case are Michael Warfield, President of the elevator company that allegedly released the fumes, and Donald Winter, Secretary of the Navy.

This is Briggs' fourth lawsuit relating to the same chemical exposure. Her previous cases were litigated in the U.S. District Court for the District of Maryland, and appeals were taken to the U.S. Court of Appeals for the Fourth Circuit. In each instance, Briggs' claims were dismissed. The defendants now move to dismiss Briggs' current case

on the basis of *res j udicata*. For reasons set forth below, the motions to dismiss are GRANTED.

*Factual Background*

For purposes of deciding the defendants' motions to dismiss, the facts in the complaint will be accepted as true. Briggs was formerly employed by the Department of the Navy as a Health Systems Analyst and Computer Specialist at the National Naval Medical Center ("NNMC") in Bethesda, Maryland. She alleges that on March 15, 2000, she was exposed to toxic chemicals while workmen renovated an elevator outside her office suite. Despite her request to be relocated, Briggs was again exposed to chemicals on March 28, 2000. Similar exposures occurred on April 24, 2000, July 11, 2000, August 14, 2000, and during the week of December 8, 2000. Between April 2001 and July 2004, Briggs was allegedly compelled to work in a building with poor air quality.

As a result of these various exposures, Briggs suffered shortness of breath and at times has required inhalers and/or hospitalization. In September 2004, she was removed from her job after she refused to accept assignment to a workspace that would exacerbate her respiratory problems. Briggs now claims that the Department of the Navy and its contractor should have been aware of the dangers inherent in chemical exposure, and that the Navy should have accommodated her requests. As a result of the defendants' alleged negligence, she has lost her job, income, medical insurance "and quality of life." Her current causes of action against the defendants include claims of reckless behavior and infliction of emotional distress.

Briggs first commenced litigation with regard to her alleged chemical exposure on April 23, 2001 ("*Briggs I*"). Her complaint, filed under the Federal Tort Claims Act ("FTCA") in Maryland federal court, claimed that the Navy and its contractor, Elevator Control Corporation ("ELCON"), were grossly negligent and had recklessly endangered her health. On February 26, 2002, District

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 4268918 (D.Vt.)
(Cite as: 2007 WL 4268918 (D.Vt.))

Judge Blake granted the government's motion to dismiss for lack of jurisdiction. Specifically, Judge Blake held that Briggs' exclusive remedy was under the Federal Employees Compensation Act ("FECA"), that FECA determinations were generally not subject to review, and that there was no jurisdiction under the FTCA. (Paper 20-3). On March 11, 2003, Judge Blake granted ELCON's motion for summary judgment on the basis of Briggs' failure to offer expert support for her negligence claim. (Paper 22-3). Briggs appealed to the Fourth Circuit, which affirmed the district court's rulings. *See Briggs v. Elevator Control Corp, et al., 2003 WL 21711390 (4 th Cir. July 24, 2003).*

**\*2** On October 31, 2003, Briggs commenced a second lawsuit arising out of the same basic facts ("*Briggs II* "), with a focus on the Navy's responses to her complaints. This suit, again filed in Maryland federal court, charged the Navy with violating the Americans with Disabilities Act ("ADA"), the Rehabilitation Act, the Family Medical Leave Act ("FMLA"), and Title VII. The complaint also included a claim of defamation.

In a 24-page opinion, Judge Blake again granted summary judgment in favor of the Navy. On Briggs' disability-related claims, Judge Blake concluded that the Navy had provided reasonable accommodations based upon the available information. With respect to Briggs' Title VII claims, the court found that Briggs had failed to show that she was treated differently from similarly situated individuals outside of her protected class, and that she had not sustained her burden on her claim of retaliation. Finally, Judge Blake held that Briggs has no private right of action against the federal government under the FMLA, and that the court had no subject matter jurisdiction over her defamation claim. (Paper 20-5).

On or about April 27, 2005, Briggs filed a third lawsuit again arising out of her alleged exposure to chemicals and the Navy's responses to her complaints ("*Briggs III*"). The defendants in that case were defendant Warfield, President of ELCON, and Gordon England, then-Secretary of the Navy. Construing Briggs' complaint broadly, Judge Blake found that it raised the following claims:

intentional infliction of emotional distress ("IIED"), presumably by both [ELCON] and the government, stemming from her initial inhalation injury; (2) assault by her managers at NNMC by allowing her to come into contact with chemicals that exacerbated her condition; (3) IIED and assault, stemming from incidents in which she was physically dragged from work areas at NNMC that she had refused to leave; (4) defamation due to the mischaracterization of her work absences by a Captain Styles; (5) negligence by [ELCON] for her original injury, and negligence by the government for allowing her to come into contact with toxic chemicals despite her requests to be notified before their use on the premises; (6) denial of reasonable accommodations for her disability by NNMC; and (7) wrongful termination by NNMC on September 11, 2004.

(Paper 20-7). All claims against ELCON were dismissed under the doctrine of *res judicata* because they "were raised or could have been raised" in *Briggs I*. Most claims against the government were similarly barred and dismissed. The defamation claim, which pertained to statements made in 2004, was dismissed for lack of subject matter jurisdiction, and Briggs' wrongful termination claim was dismissed for failure to exhaust administrative remedies. *Id.* Briggs appealed to the Fourth Circuit, which affirmed the district court's decision. *See Briggs v. Elevator Control Corp., et al., 2006 WL 1477140 (4th Cir. May 25, 2006).*

**\*3** Briggs commenced her current action in this Court on November 21, 2006. In the complaint's introduction, Briggs writes that "some aspects of the complaint were previously presented to the Federal District Court for Maryland." Nonetheless, she asserts that during her litigation in Maryland and before the Fourth Circuit, she was "denied even the most basic protection of her rights .... [T]o allow the decision from the Fourth Circuit to stand will be a gross miscarriage of justice and establish a standard that compromises the creditability [sic] of our judicial system." (Paper 7).

The complaint in this case brings a mix factual allegations and legal arguments. Some of the arguments, such as exhaustion and *res judicata,* appear to be in response to defenses asserted in prior cases.[FN1] Others complain about

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 4268918 (D.Vt.)
(Cite as: 2007 WL 4268918 (D.Vt.))

the conduct of the courts in those cases. For example, Briggs argues that her cases should not have been assigned to Judge Blake, and that the courts treated her differently because she was a black female proceeding *pro se.* Briggs also claims that she was denied due process. The courts and judges involved in Briggs' previous litigation have not been named as defendants. [FN2]

> FN1. In fact, the complaint in this case is nearly identical to the brief Briggs filed with the Fourth Circuit in *Briggs III.* (Papers 7 and 20-8).

> FN2. Briggs brought a prior action against trial court judges, appellate judges and personnel in the Fourth Circuit claiming that she had been denied her rights. The case was dismissed. *Briggs v. U.S. Dist. Court Of Maryland,* 2003 WL 23733550 (D.Md. Nov. 14, 2003), *aff'd,* 2004 WL 1328005 (4th Cir. June 15, 2004).

The claims against the named defendants, Warfield and Winter, appear to be limited to emotional distress and reckless behavior. These claims relate back to Briggs' exposure to harmful chemicals, and to events surrounding her termination. The defendants now move to dismiss on grounds of *res judicata.*

*Discussion*

I. *Motion to Dismiss Standard*

On a motion to dismiss, the Court must accept as true the factual allegations in the complaint, and must draw all inferences in the plaintiff's favor. *See Allaire Corp. v. O kumus,* 433 F.3d 248, 249-50 (2d Cir.2006). "To survive dismissal, the plaintiff must provide the grounds upon which [her] claim rests through factual allegations sufficient to 'raise a right to relief above the speculative level.' " *ATSI Comms., Inc. v. Shaar Fund, Ltd.,* 493 F.3d 87, 98 (2d Cir.2007) (quoting *Bell Atlantic Corp. v. Twombly,* 127 S.Ct. 1955, 1965 (2007)). When a party moves to dismiss on the basis of *res judicata,* the Court may consider both the face of the complaint and matters of

which the Court may take judicial notice, including prior court decisions. *See Conopco, Inc. v. Roll Int'l,* 231 F.3d 82, 86 (2d Cir.2000); *Pani v. Empire Blue Cross Blue Shield,* 152 F.3d 67, 75 (2d Cir.1998) ("It is well established that a district court may rely on matters of public record in deciding a motion to dismiss under Rule 12(b)(6) ...."). Also, the Court remains mindful that *pro se* pleadings are to be read liberally. *See Phillips v. Girdich,* 408 F.3d 124, 128 (2d Cir.2005).

II. *Winter's Motion to Dismiss*

Winter argues that Briggs' claims, brought against him in his role as Secretary of the Navy, are each barred by *res j udicata.* The doctrine of *res judicata* presumes that "a person should not be twice-vexed by the same claim, and that it is in the interest of society to bring an end to disputes." 18 James Wm. Moore, et al ., Moore's Federal Practice ¶ 131.12[2] (3d ed.2006). "The doctrine bars 'later litigation if [an] earlier decision was (1) a final judgment on the merits, (2) by a court of competent jurisdiction, (3) in a case involving the same parties or their privies, and (4) involving the same cause of action.' " *EDP Med. Computer Sys. v. United States,* 480 F.3d 621, 624 (2d Cir.2007) (quoting *In re Teltronics Servs., Inc.,* 762 F.2d 185, 190 (2d Cir.1985)) (brackets in original).

*4 The burden of establishing *res j udicata* rests with the defendant. *Greenberg v. Bd. of Governors of the Fed. Reserve Sys.,* 968 F.2d 164, 170 (2d Cir.1992). If the defendant meets that burden, the doctrine precludes claims based on "issues actually decided in determining the claim asserted in the first action and issues that could have been raised in the adjudication of that claim." *Nat'l Labor Relations Bd. v. United Techs. Corp.,* 706 F.2d 1254, 1259 (2d Cir.1983).

For purposes of analysis, Winter divides Briggs' factual allegations into two categories: those occurring prior to her termination by the Navy in 2004, and those related to her termination. Briggs' pre-termination claims pertain directly to her alleged exposure to chemical fumes, and to conduct by the Navy related to that exposure. In *Briggs III,* Judge Blake and the Fourth Circuit each determined

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 4268918 (D.Vt.)
(Cite as: 2007 WL 4268918 (D.Vt.))

that such claims were barred by *res judicata.*

Reviewing the requirements for *res judicata,* the dismissal in *Briggs III* for failure to state claim under Rule 12(b)(6) constituted a decision on the merits. *See Federated Dep't Stores, Inc. v. Moitie,* 452 U.S. 394, 399 n. 3 (1981); *Nowak v. Ironworkers,* 81 F.3d 1182, 1187 (2d Cir.1996). The Secretary of the Navy was a defendant, and the claims arose out of the same set of facts as those alleged here. The causes of action brought against defendant Winter-infliction of emotional distress and reckless behavior-were largely raised in *Briggs I* and again in *Briggs III.* Accordingly, Briggs's pre-termination claims are again barred by *res judicata.*

Briggs' termination-related claims were dismissed in *Briggs III* due to a failure to exhaust administrative remedies. Winter argues that because Briggs can no longer cure her exhaustion problem, her wrongful termination claims are now barred. The Court agrees.

In *Briggs III,* Judge Blake found that Briggs had failed to exhaust her administrative remedies as required under the ADA and Rehabilitation Act. The court also found that "Ms. Briggs does not deny that she failed to pursue her administrative remedies. ..." (Paper 20-7 at 7). In her current complaint, Briggs states that she "should not be forced to go through years of an administrative process." (Paper 7 at 3).[FN3]

>    FN3. In response to Winter's motion to dismiss, Briggs asserts that she did engage in, and exhaust, the EEO process. Judge Blake's decision in *Briggs III,* however, suggests that she did not exhaust that process with respect to her termination. (Paper 20-7 at 6-7).

Briggs was terminated by the Navy on September 11, 2004. (Paper 20-7 at 5). Federal regulations required her to appeal her termination within 30 days, and to begin the EEO counseling process within 45 days. 5 C.F.R. § 1201.154(a-b); 29 C.F.R. § 1614.105(b). At the time of Judge Blake's decision in *Briggs III,* those deadlines had already passed and exhaustion was no longer an option. In

such a situation, where a procedural defect cannot be cured, *res judicata* will apply. *Cf. Berry v. Kerik,* 366 F.3d 85, 88 (2d Cir.2004) (dismissal is with prejudice where plaintiff failed to pursue administrative remedies).

To the extent that Briggs is presenting new legal theories, facts, and/or remedies, her claims remain barred. New legal theories arising out of the same operative facts will not avoid the application of *res judicata. Waldman v. Village of Kiryas Joel,* 207 F.3d 105, 108 (2d Cir.2000). Nor can the plaintiff split her case into "various suits, ... with different evidence 'necessary' to each suit. *Id.* (citation omitted).[FN4]

>    FN4. One of Briggs' new claims is that she is being denied disability benefits. Her filings make reference to both workers compensation benefits and disability retirement benefits. In either event, this Court has no jurisdiction to review the denial of such benefits. *See* 5 U.S.C. §§ 8128(b); 5 U.S.C. § 7703; 5 C.F.R. §§ 844.104, 841.306 and 841.308.

**\*5** In sum, Briggs has had ample opportunity to bring her claims, both in court and administratively. Her claims have been barred on the merits, and may not be presented again here. If Briggs is seeking a review decisions by courts in the Fourth Circuit, this Court has no power to conduct such a review. *See Lowenschuss v. West Publ'g Co.,* 542 F.2d 180, 183-84 (3d Cir.1976) ("an order elaborating on an official opinion of another court ... is undesirable on policy grounds alone as an unwarranted intrusion on the internal affairs of a coequal, sister circuit."). For these reasons, Winter's motion to dismiss is GRANTED.

### III. *Warfield's Motion to Dismiss*

Res judicata also bars Briggs' claims against defendant Warfield. The claims brought against Warfield, as President of ELCON, are essentially the same as those brought against ELCON in the prior suits, to wit, claims relating to the release of chemicals. For reasons discussed above, dismissals of those claims constituted adjudications

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 4268918 (D.Vt.)
(Cite as: 2007 WL 4268918 (D.Vt.))

on the merits. The fact the Fourth Circuit cases were construed as being brought against ELCON, and not Warfield, is immaterial, as the law clearly provides that *res judicata* bars claims against defendants and their privies. *EDP Med. Computer Sys ., 480 F.3d at 624.* Because the claims against Warfield either were or could have been brought in Briggs' prior litigation, the present claims against him are barred and his motion to dismiss is GRANTED.

*Conclusion*

For the reasons set forth above, the defendants' motions to dismiss (Papers 20 and 22) are GRANTED. Defendant Winter's motion to stay proceedings until the motions to dismiss are ruled upon (Paper 32) is GRANTED, and Briggs' motion for mandatory injunctive relief (Paper 31) is DENIED as moot. This case is DISMISSED.

D.Vt.,2007.
Briggs v. Warfield
Not Reported in F.Supp.2d, 2007 WL 4268918 (D.Vt.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.



Not Reported in F.Supp.2d, 2008 WL 3156214 (N.D.N.Y.)
(Cite as: 2008 WL 3156214 (N.D.N.Y.))

Only the Westlaw citation is currently available.

United States District Court,
N.D. New York.
Charles EDWARDS, Petitioner,
v.
Darwin LADLAIR,[FN1] Superintendent, Franklin
Correctional Facility, Respondent.

FN1. Darwin Ladlair, Superintendent, Franklin
Correctional Facility, substituted for Glenn S.
Goord, Commissioner, Department of
Correctional Services. *See* Order at Docket No.
3; Fed.R.Civ.P. 17(d).

No. 9:07-cv-00059-JKS.

Aug. 4, 2008.

Charles Edwards, Malone, NY, pro se.

Thomas B. Litsky, New York State Attorney General -
New York Office, New York, NY, for Respondent.

MEMORANDUM DECISION

JAMES K. SINGLETON, JR., District Judge.

*1 Petitioner Charles Edwards, a state prisoner appearing
*pro se,* has petitioned for a writ of habeas corpus pursuant
to 28 U.S.C. § 2254. Petitioner is currently in the custody
of the New York Department of Correctional Services,
incarcerated at the Franklin Correctional Facility.

I. BACKGROUND/PRIOR PROCEEDINGS

In may 1994 Edwards was convicted, following jury trial,
in the Bronx County Supreme Court of three counts of
first-degree rape (N.Y. Pen. Law § 130.35(1)), three
counts of first-degree rape (N.Y. Pen. Law § 130.35(3)),
four counts of first-degree sodomy (N.Y. Pen. Law §
130.50(1)), four counts of first-degree sodomy (N.Y. Pen.
Law § 130.50(3)), one count of first-degree sexual abuse
(N.Y. Pen. Law § 130.65(1)), and one count of
first-degree sexual abuse (N.Y. Pen. Law § 130.65(3).
Edwards was also convicted upon a plea of guilty to bail
jumping in the first degree. Edwards was sentenced to 14
concurrent terms of eight and one-half to 17 years each for
the rape and sodomy charges, concurrent with two
concurrent terms of three to six years on the sexual abuse
charges. Edwards appealed his conviction of the Appellate
Division, First Department, which affirmed his conviction,
and the New York Court of Appeals denied leave to
appeal. *People v. Edwards,* 254 A.D.2d 136, 681
N.Y.S.2d 227 (N.Y.A.D.1998), *lv. denied,*93 N.Y.2d 852,
688 N.Y.S.2d 499, 710 N.E.2d 1098 (N.Y.1999)
(Table).[FN2]

FN2. Edwards also challenged his conviction in
a federal habeas proceeding in the Southern
District of New York, which denied his petition.
*Edwards v. Mazzuca,* 2007 WL 2994449
(S.D.N.Y. October 15, 2007), *appeal pending.*

In January 2004, the Attica Time Allowance Committee
(TAC) recommended that none of Edwards' 5 years 8
months of good time credit be withheld. That
recommendation was affirmed by the Commissioner's
designee. Subsequently, after his transfer to the Gowanda
Correctional Facility, the Gowanda TAC notified Edwards
that a hearing would be held to determine whether good
time allowance should be withheld for his failure to
participate in the Sex Offender Counseling Program
("SOCP"). Edwards appeared before the Gowanda TAC
and, after according Edwards an opportunity to be heard,
found that he had, in fact, refused to participate in the
SOCP and recommended withholding all 5 years 8 months

© 2010 Thomson Reuters. No Claim to Orig. US Gov.
Works.

Not Reported in F.Supp.2d, 2008 WL 3156214 (N.D.N.Y.)
(Cite as: 2008 WL 3156214 (N.D.N.Y.))

of Edwards' available good time, subject to reconsideration when he completed the SCOP. The Gowanda Superintendent confirmed the TAC decision, and on March 8, 2004, the decision was affirmed by the Commissioner's designee.

On April 21, 2004, Edwards filed a petition under article 78, N.Y. Civil Practice Law and Rules, in the Albany County Supreme Court challenging the decision to withhold his good time allowance, which the Albany County Court dismissed. Edwards timely appealed to the Appellate Division, Third Department, which affirmed the dismissal on February 16, 2006, and the New York Court of Appeals denied leave to appeal on September 14, 2006, and reconsideration on December 21, 2006. *Matter of Edwards v. Goord,* 26 A.D.3d 659, 808 N.Y.S.2d 841 (N.Y.A.D.), *lv. denied,* 822 N.E.2d 1173 (N.Y.) (Table), *reargument denied,* 7 N.Y.3d 922, 827 N.Y.S.2d 691, 860 N.E.2d 993 (N.Y.2006) (Table).

Edwards timely filed his petition in this Court on January 8, 2007.

## II. STANDARD OF REVIEW

**\*2** Because Edwards filed his petition after April 24, 1996, it is governed by the standard of review set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d). Consequently, this Court cannot grant relief unless the decision of the state courts was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *Williams v. Taylor,* 529 U.S. 362, 405-406, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000); *see Lockyer v. Andrade,* 538 U.S. 63, 70-73, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003) (explaining this standard). In applying this standard, this Court reviews the last reasoned decision by the state court. *Jones v. Stinson,* 229 F.3d 112, 118 (2d Cir.2000). State court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell,* 537 U.S. 322,

340, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003).

If a federal claim has not been adjudicated on the merits, AEDPA deference is not required. *Miranda v. Bennett,* 322 F.3d 171, 178 (2d Cir.2003). In that situation, conclusions of law and mixed questions of fact and law are reviewed *de novo. DeBerry v. Portuondo,* 403 F.3d 57, 67 (2d Cir.2005). Where there is no reasoned decision of the state court addressing the ground or grounds raised by the Petitioner on the merits and no independent state grounds exist for not addressing those grounds, this Court must decide the issues *de novo* on the record before it. *See Spears v. Greiner,* 459 F.3d 200, 203-04 (2d Cir.2006).

To the extent that Petitioner alleges errors of state law, they are beyond the purview of this Court in deciding a petition for federal habeas corpus relief. This Court may only address violations of federal law. 28 U.S.C. § 2254(d); *Estelle v. McGuire,* 502 U.S. 62, 67-68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991) ("We have stated many times that federal habeas corpus relief does not lie for errors of state law. Today, we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.") (citations and internal quotation marks omitted). It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law. *See Engle v. Isaac,* 456 U.S. 107, 128, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982). It is also presumed that the state court knew and correctly applied state law. *See Walton v. Arizona,* 497 U.S. 639, 653, 110 S.Ct. 3047, 111 L.Ed.2d 511 (1990), *overruled on other grounds by Ring v. Arizona,* 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002).

## III. GROUNDS RAISED/DEFENSES

Edwards states a single ground, to wit: that the rescission of his good time violated his due process and equal protection rights, specifically his First, Fifth, and Fourteenth Amendment rights. He seeks restoration of his 5 years and 8 months of good time credit and immediate release from prison. Edwards raises two grounds founded upon federal rights: (1) compelled participation in the SCOP violates his Fifth Amendment right against self

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 3156214 (N.D.N.Y.)
(Cite as: 2008 WL 3156214 (N.D.N.Y.))

incrimination; and (2) rescission of his previously credited good time violated due process.[FN3] Respondent concedes that the grounds raised were exhausted in Edwards's state court article 78 proceeding.

> FN3. With respect to his First Amendment claim, Edwards does not address that matter nor does he articulate the basis upon which his First Amendment rights may have been violated in either his petition or his traverse. To the extent that Edwards raises claims based upon the misinterpretation or misapplication of state law, those issues are, as noted above, beyond the purview of this Court in a federal habeas proceeding. Accordingly, the Court does not address those claims.

### IV. DISCUSSION

**\*3** In rejecting Edwards's arguments, the Appellate Division held (808 N.Y.S.2d at 842):

> It is well established that "[g]ood behavior allowances are in the nature of a privilege ... and no inmate has the right to demand or to require that any good behavior allowance be granted to him [or her]" (7 NYCRR 260.2). The determination to withhold a good time allowance is discretionary in nature and, as long as it is made in accordance with the law, it will not be subject to judicial review (see Correction Law § 803[4]; Matter of Thomas v. Time Allowance Comm. at Arthur Kill Correctional Facility, 4 A.D.3d 637, 638, 771 N.Y.S.2d 739 [2004] ). Here, the record evidence demonstrates that petitioner, on more than one occasion, refused to participate in a recommended sex offender program. Such refusals provided a rational basis for the withholding of petitioner's good time allowance (see 7 NYCRR 260.3[b]; Matter of McPherson v. Goord, 17 A.D.3d 750, 751, 793 N.Y.S.2d 230 [2005], lv. denied 5 N.Y.3d 709, 803 N.Y.S.2d 30, 836 N.E.2d 1153 [2005]; Matter of Bolster v. Goord, 300 A.D.2d 711, 713, 752 N.Y.S.2d 403 [2002] ). Petitioner's remaining contentions, as set forth in his pro se brief, have been examined and found to be lacking in merit.

There is no constitutional or inherent right of a convicted person to be conditionally released on parole before expiration of a sentence. Greenholtz v. Inmates of Neb. Penal and Corr. Complex, 442 U.S. 1, 7, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979). The Second Circuit has specifically held that New York's parole scheme does not create a liberty interest protected by the Due Process Clause of the Fourteenth Amendment. See Barna v. Travis, 239 F.3d 169, 171 (2d Cir.2001); see also Davis v. Dennison, 219 Fed.Appx. 68, 70 (2d Cir.2007). Although the Second Circuit has not expressly reached the issue before this Court, the grant of good time credits, it appears to the Court that the rationale underpinning Barna is equally applicable to that subject. The statutory basis for and regulations implementing the good time scheme are substantially similar to those of the parole scheme.

N.Y. Corrections Law § 803 "Good behavior allowances against determinate and indeterminate sentences," provides (emphasis added):

1. (a) Every person confined in an institution of the department or a facility in the department of mental hygiene serving an indeterminate or determinate sentence of imprisonment, except a person serving a sentence with a maximum term of life imprisonment, *may receive* time allowance against the term or maximum term of his sentence imposed by the court. Such allowances *may be granted* for good behavior and efficient and willing performance of duties assigned or progress and *achievement in an assigned treatment program,* and *may be withheld,* forfeited or canceled in whole or in part for bad behavior, violation of institutional rules or *failure to perform properly in the duties or program* assigned.

**\*4** (b) A person serving an indeterminate sentence of imprisonment *may receive* time allowance against the maximum term of his sentence not to exceed one-third of the maximum term imposed by the court.

Section 803(3) confers on the commissioner of correctional services the authority to promulgate rules and regulations for granting, withholding, forfeiture, cancellation, and restoration of good time, as well as

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 3156214 (N.D.N.Y.)
(Cite as: 2008 WL 3156214 (N.D.N.Y.))

establishing committees within each correctional facility. Section 803(4) provides:

No person shall have the right to demand or require the allowances authorized by this section. The decision of the commissioner of correctional services as to the granting, withholding, forfeiture, cancellation or restoration of such allowances shall be final and shall not be reviewable if made in accordance with law.

The regulations promulgated by the commissioner parrot this provision: "Good behavior allowances are in the nature of a privilege to be earned by the inmate and no inmate has the right to demand or to require that any good behavior allowance be granted to him." 7 N.Y. Comp.Codes & Regs. § 260.2.

The commissioner's regulations also make clear that the grant of a good time allowance is contingent upon further compliance with the requirements for good time allowances. 7 N.Y. Comp.Codes & Regs. § 262.1(b) ("The grant of the good behavior allowance shall be contingent on the inmate's continued good behavior, efficient and willing performance of duties assigned, and progress and achievement in an assigned treatment program."). The regulations further provide for the reconsideration of the amount of good time to be granted for acts in disregard of the statutory criteria for good behavior allowances, *e.g.,* achievement in assigned treatment programs. 7 N.Y. Comp.Codes & Regs. § 263.2(b).

Like the parole provisions in *Barna,* granting or withholding of good time is a discretionary matter subject to the prisoner meeting and maintaining the requirements for eligibility. Thus, the inescapable conclusion is that, like the New York parole scheme, the wholly discretionary good time allowance scheme does not "create a legitimate expectancy" of obtaining an earlier release. *Barna,* 239 F.3d at 171.

Even if the Court were to reach the merits on Petitioner's due process claim, Petitioner would not prevail. The New York scheme provides for a review of the inmate's file, a personal interview by the allowance committee, and a statement of its reasons for denying good time credits.[FN4]

This meets the requirements of due process. *See Greenholtz,* 442 U.S. at 15.

FN4.7 N.Y. Comp.Codes & Regs. §§ 261.3; 261.4.

Edwards argues that because he continues to maintain he is innocent and his guilt has yet to be finally established, his participation in the SOCP would, because it requires that he discuss his criminal acts, result in his incriminating himself.[FN5] Edwards's Fifth Amendment claim fails for two reasons.[FN6] First, the Fifth Amendment's Self-Incrimination Clause is applicable to the states by reason of its incorporation into the Due Process Clause of the Fourteenth Amendment. *Malloy v. Hogan,* 378 U.S. 1, 6, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964). Because Edwards has no "liberty interest in [a good time allowance] ... the protections of the Due Process Clause are inapplicable." *Barna,* 239 F.3d at 171.

FN5. Edwards ignores the fact that he was convicted by a jury and his conviction upheld by the New York appellate courts. His only pending action challenging his conviction is his federal habeas petition now pending on appeal before the Second Circuit. See note 2, page 1.

FN6. The Appellate Division summarily denied his Fifth Amendment claim without opinion. Consequently, this Court must determine *de novo* on the record whether the denial was contrary to or an unreasonable application of clearly established Federal law as determined by the Supreme Court.

**5** More importantly, however, this Court cannot say that the decision of the Appellate Division upholding denial of the Edwards's claims was contrary to, or an unreasonable application of, Federal law as established by the Supreme Court. 28 U.S.C. § 2254(d)(1). The Supreme Court, in a civil rights action brought under 42 U.S.C. § 1983, held in a plurality decision that withholding prison privileges for refusal to participate in a mandatory sex offender treatment program does not constitute a compulsion that

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 3156214 (N.D.N.Y.)
(Cite as: 2008 WL 3156214 (N.D.N.Y.))

encumbers the constitutional right not to incriminate oneself under the Fifth Amendment. *McKune v. Lile,* 536 U.S. 24, 35-47, 122 S.Ct. 2017, 153 L.Ed.2d 47 (2002). The Court is not unmindful of the fact that in *McKune* the Supreme Court noted the Kansas program upheld in that case did not affect a prisoner's eligibility for good-time credits or parole. 536 U.S. at 38 (dictum). Clearly established law, as used in § 2254(d)(1), refers to the holdings, as opposed to the *dicta,* of the decisions of the Supreme Court as of the time of the relevant state-court action. *Williams v. Taylor,* 519 U.S. 362, 412 (2000). The Court also notes that no decision of the Supreme Court provides a clear answer to the question of whether a state may withhold good time credits, or deny parole, based upon the refusal of a prisoner to participate in a sex offender treatment program on Fifth Amendment grounds.[FN7]

> FN7. The Court is also not unmindful of the unpublished decision in *Donhauser v. Goord,* 181 Fed.Appx. 11 (2d Cir.2006), a civil rights action under 42 U.S.C. § 1983, in which the Second Circuit remanded the case to the district court for clarification, apparently agreeing, *sub silentio,* that the allegation DOCS automatically denied good time credits as a direct result of a prisoner's refusal to participate in the sex offenders' counseling program gave rise to a viable claim under the Fifth Amendment. This does not, however, change the analysis in this case-in a § 2254 action, the Court is concerned with the law as established by the Supreme Court, not the Court of Appeals for the Second Circuit. This Court is, however, bound by decisions of the Second Circuit as to whether the answer to a particular issue has been clearly established by the Supreme Court. That is not present in this case.

What *McKune* clearly held is that withholding of privileges from prisoners, whether automatic or discretionary, for a failure to discuss his self-incriminating criminal history in sex offender treatment programs, whether such programs are voluntary or compulsory, does not, *ipso facto,* constitute compulsory self-incrimination within the scope of the Fifth Amendment's self-incrimination proscription. The test, as articulated in

*McKune,* depends upon the severity of the consequences of the choice made by the prisoner not to participate and discuss his crimes. 536 U.S. at 44-45 (plurality), 48-50 (O'Connor, J. concurring). Unfortunately, the Supreme Court has not provided a bright-line of demarcation above which the severity of the consequences constitutes compulsion.

The Supreme Court has upheld against Fifth Amendment compulsory self-incrimination claims the imposition of sanctions or penalties for a failure to testify in several instances where the adverse consequence of making that choice was much greater than that imposed on Edwards in this case. *Ohio Adult Parole Authority v. Woodward,* 523 U.S. 272, 118 S.Ct. 1244, 140 L.Ed.2d 387 (1998) (allowing adverse inferences to be drawn from a silence of a death-row inmate in the context of a clemency hearing); *Baxter v. Palmigiano,* 425 U.S. 308, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976) (permitting adverse inferences to be drawn from silence at a prison disciplinary hearing); *Minnesota v. Murphy,* 465 U.S. 420, 104 S.Ct. 1136, 79 L.Ed.2d 409 (1984) (parolee's admission of guilt of rape and murder to a probation officer where a condition of parole required him to be truthful with the probation officer); *McGautha v. California,* 402 U.S. 183, 91 S.Ct. 1454, 28 L.Ed.2d 711 (1971) (use of statements made to mitigate responsibility and avoid the death penalty against him as evidence of guilt); *see also Brady v. Maryland,* 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970) (admission of guilt as part of a plea bargain).

**\*6** In two recent decisions the Supreme Court has expressly indicated that the phrase "clearly established" is to be narrowly, not broadly, applied. *Wright v. Van Patten,* 552 U.S. ----, 128 S.Ct. 743, 169 L.Ed.2d 583 (2008); *Carey v. Musladin,* 549 U.S. 70, 127 S.Ct. 649, 166 L.Ed.2d 482 (2006). "Because our cases give no clear answer to the question presented, let alone one in Van Patten's favor, it cannot be said that the state court unreasonably applied clearly established Federal law." *Wright v. Van Patten,* 552 U.S. at ----, 128 S.Ct. at 747, quoting from *Musladin,* 549 U.S. at ----, 127 S.Ct. at 654 (internal quotation marks and alterations omitted). Here, given the legitimate penological objective of the SCOP (rehabilitation), the fact that the right to a good time allowance is a discretionary privilege, the degree of severity of the sanction as measured against existing

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 3156214 (N.D.N.Y.)
(Cite as: 2008 WL 3156214 (N.D.N.Y.))

Supreme Court precedent as to the upper limit, and the lack of any controlling precedent on point, this Court cannot say that the no reasonable jurist could find that there was no compulsion in this case. In the case before this Court, recognizing that the decision of the Appellate Division is not contrary to any law clearly established by the Supreme Court,[FN8] collateral relief in the form of a habeas writ is unjustified. *See id.*

> FN8. As noted in *McKune,* no single case exists where the Supreme Court has held that the denial of a privilege to a prisoner for refusal to participate in a rehabilitation program amounts to unconstitutional compulsion. 536 U.S. at 40.

Edwards is not entitled to relief on the ground that participation in the SCOP compelled him to be a witness against himself in violation of the Fifth Amendment.

### V. CONCLUSION AND ORDER

Petitioner is not entitled to relief on any of the grounds raised in his petition.

**IT IS THEREFORE ORDERED THAT** the Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DENIED.**

The Court finds that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further. 28 U.S.C. § 2253(c); *Slack v. McDaniel,* 529 U.S. 473, 484, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000). Accordingly,

**IT IS FURTHER ORDERED THAT,** the Court will grant a Certificate of Appealability on the issues:

1. Whether the New York good time allowance scheme creates a sufficient liberty interest to invoke the protection

of the Due Process Clause of the Fourteenth Amendment; and

2. Whether participation in the sex offender counseling program and its application in the process of granting good time credits constitutes sufficient compulsion to encumber the constitutional right not to incriminate oneself under the Fifth Amendment under clearly established Federal law as determined by the Supreme Court.

N.D.N.Y.,2008.
Edwards v. Ladlair
Not Reported in F.Supp.2d, 2008 WL 3156214 (N.D.N.Y.)

END OF DOCUMENT



Slip Copy, 2009 WL 3165830 (N.D.N.Y.)
(Cite as: 2009 WL 3165830 (N.D.N.Y.))

Only the Westlaw citation is currently available.

United States District Court,
N.D. New York.
Michael L. DECKER, Plaintiff,
v.
Michael F. HOGAN, Commissioner, NYS Office of
Mental Health; Donald Sawyer, Executive Director,
Central New York Psychiatric Center, Defendants.
**No. 9:09-CV-0239 (TJM/GJD).**

Sept. 28, 2009.

Michael L. Decker, pro se.

Office of the Attorney General, Charles J. Quackenbush,
Esq., Assistant Attorney General, of Counsel, State of
New York, for Defendants.

**MEMORANDUM-DECISION AND ORDER**

THOMAS J. McAVOY, Senior District Judge.

**I. Introduction**

**\*1** Plaintiff Michael L. Decker commenced this action *pro
se* seeking relief pursuant to 42 U.S.C. § 1983 for the
alleged violation of his constitutional rights. Dkt. No. 1.
Plaintiff is a civil detainee under Article 10 of the New
York Mental Health Law, and has been confined at the
Central New York Psychiatric Center ("CNYPC") since
August, 2008. Plaintiff challenges the constitutionality of
three aspects of the Sexual Offender Treatment Program
("SOTP") administered by the New York State Office of
Mental Health ("OMH") at CNYPC. Plaintiff claims that
the SOTP utilizes treatment programs which are

faith-based, and that the requirement that he participate in
those programs violates his rights under the First
Amendment. *Id.* at 2-3. Plaintiff also claims that
SOTP-required polygraph and penile plethysmography
("PPG") FN1 examinations are unconstitutional. *Id.* at 3-4.
According to plaintiff, successful completion of the SOTP
is a condition of his release from CNYPC. *Id.* at 3-4.
Named as defendants are Michael Hogan, Commissioner
of OMH, and Donald Sawyer, Executive Director of
CNYPC. Plaintiff seeks monetary damages as well as
declaratory and injunctive relief. FN2

FN1. Penile Plethysmography, as defined by the
OMH in the Advancement to SOTP Phase II-IV
Consent to Participate in Treatment, is intended
to "assess sexual interests and measure treatment
effectiveness. In this treatment, while wearing a
sterilized gauge around the penis, a machine
records any erection response that results from
listening to and/or viewing depiction of sexual
and non-sexual materials. This assessment occurs
within a laboratory setting with complete
privacy." Dkt. No. 3-3 at 8. For recent
discussions of the wide range of opinion
regarding the efficacy of PPG examinations and
their proper role in sex offender treatment
programs, see *United States v. Rhodes,* 552 F.3d
624, 626-29 (7th Cir.2009) (finding that
challenge to PPG as condition of supervised
release not ripe where condition would become
effective only after defendant served more than
ten years imprisonment and several other
conditions were met); *United States v. Weber,*
451 F.3d 552, 561-66 (9th Cir.2006)
(requirement of PPG testing as part of sex
offender treatment program imposed as a
condition of supervised release requires
heightened procedural protections).

FN2. Two other CNYPC detainees have filed §
1983 actions in the Northern District challenging
these same aspects of the SOTP. See *Pratt v.
Hogan,* No. 6:08-CV-1003, 2009 WL 1916284
(N.D.N.Y. Jul. 6, 2009) (Hurd, J.)

© 2010 Thomson Reuters. No Claim to Orig. US Gov.
Works.

Slip Copy, 2009 WL 3165830 (N.D.N.Y.)
(Cite as: 2009 WL 3165830 (N.D.N.Y.))

(injunctive/declaratory relief claims dismissed pursuant to *Younger* abstention; defendants granted qualified immunity from claims for money damages); *McChesney v. Hogan*, No. 9:08-CV-1186, Report-Recommendation that motion for injunctive relief be denied, 2009 WL 607398 (N.D.N.Y. Dec. 23, 2008) (Peebles, M.J.), *adopted, 2009 WL 607398, at *7 (N.D.N.Y. Mar. 9, 2009)* (Mordue, C. J.). McChesney also claims that the SOTP requirement that he compile an autobiography is unconstitutional. *McChesney, 2009 WL 607398, at *1.*

In addition to his complaint, plaintiff filed a motion seeking a temporary restraining order and preliminary injunction enjoining defendants from mandating participation in faith-based programs and from requiring polygraph or PPG examinations as a part of the SOTP. Dkt. No. 3-2 at 1-2.

By Order of this Court filed March 26, 2009, plaintiff was granted leave to proceed *in forma pauperis* and the U.S. Marshal was directed to effect service of process on the defendants. Dkt. No. 5. Plaintiff's request for the issuance of a temporary restraining order was denied. Defendants were directed to file a response to the preliminary injunction motion. *Id.* at 2-3.

Defendants have responded in opposition to plaintiff's motion for injunctive relief. Dkt. No. 8. Defendants also filed a "cross-motion" seeking dismissal of the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[FN3]

FN3. Plaintiff has not filed a response to defendants' motion to dismiss.

These motions are before the Court for consideration.[FN4]

FN4. The parties are advised that the referral to a Magistrate Judge as provided for under Local Rule 72.3 has been rescinded for purposes of this

motion. Any appeal taken from this Memorandum-Decision and Order, if appropriate, will be to the Court of Appeals for the Second Circuit.

## II. Motion to Dismiss Standard

In deciding a Rule 12(b)(6) dismissal motion, "the court must accept the material facts alleged in the complaint as true, and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin,* 18 F.3d 133, 136 (2d Cir.), *cert. denied,* 513 U.S. 836 (1994).[FN5] The plaintiff must satisfy "a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible.*" *Iqbal v. Hasty,* 490 F.3d 143, 157-58 (2d Cir.2007) (italics in original). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 563 (2007).

FN5. The "complaint" includes any written instrument attached to it as an exhibit and any statements or documents incorporated into the complaint by reference. *Gant v. Wallingford Bd. of Educ.,* 69 F.3d 669, 674 (2d Cir.1995); Fed.R.Civ.P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.")

*2 The burden undertaken by the moving party is substantial, as the question presented by the motion to dismiss is not whether the non-moving party is likely ultimately to prevail, "but whether the claimant is entitled to offer evidence to support the claims." *Gant v. Wallingford Bd. of Educ.,* 69 F.3d 669, 673 (2d Cir.1995) (other citations omitted). In order to withstand a motion to dismiss, a complaint must plead enough facts to "raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555. In the event of a perceived deficiency in a *pro se* plaintiff's complaint, a court should not dismiss without granting leave to amend at least once if there is any indication that a valid claim might be stated. *Branum v. Clark,* 927 F.2d 698, 704-05 (2d Cir.1991); *see*

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3165830 (N.D.N.Y.)
(Cite as: 2009 WL 3165830 (N.D.N.Y.))

*also* Fed.R.Civ.P. 15(a) ("The court should freely give leave when justice so requires.").

### III. First Amendment Claims

Plaintiff identifies himself as an atheist.[FN6] Since his placement at CNYPC, plaintiff has been assigned to the SOTP. Participation in the SOTP has "subjected [plaintiff] to religious practices and rituals." Dkt. No. 1 at 2. The "Good Lives Model and Boundaries Programs" teach the participants that they must "believe in something denoted as spirituality." *Id.* at 3. In addition, the SOTP includes Dialectic Behavior Therapy, which teaches "the rituals and practices" of Buddhism. *Id.* The SOTP also utilizes several "Hazeldon products which incorporate Christian beliefs and practices." *Id.* These programs include "From the Inside Out," "Growing Up Male," "Problem Solving" and "Anger Management." [FN7]

> FN6. The following facts are drawn from plaintiff's complaint and are accepted as true for purposes of the pending motion to dismiss. *Erickson v. Pardus,* 551 U.S. 89, 93-94 (2007); *Boykin v. KeyCorp,* 521 F.3d 202, 204 (2d Cir.2008).

> FN7. In his memorandum in support of the motion for injunctive relief, plaintiff states that the Hazeldon products are "Christian based and incorporate the 12 steps/12 traditions of A.A. (Alcoholics Anonymous)." Dkt. No. 3 at 3.

The First Amendment, made applicable to states by the Fourteenth Amendment, states that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof...." U.S. Const. amend. I. The First Amendment embraces two fundamental concepts: "freedom to believe and freedom to act" on one's beliefs. *Cantwell v. Connecticut,* 310 U.S. 296, 303 (1940). The First Amendment's Establishment Clause prohibits government from officially preferring one religious denomination over another. Thus, "[t]he clearest command of the Establishment Clause is that one religious denomination cannot be officially preferred over another."

*Larson v. Valente,* 456 U.S. 228, 244 (1982); *Skoros v. City of New York,* 437 F.3d 1, 16 (2d Cir.2006). The First Amendment also protects individuals against "government compulsion either to do or refrain from doing an act forbidden or required by one's religion, or to affirm or disavow a belief forbidden or required by one's religion." *Mozert v. Hawkins County Bd. of Educ.,* 827 F.2d 1058, 1066 (2d Cir.1987), *cert. denied,* 484 U.S. 1066 (1988).

Defendants urge dismissal of plaintiff's First Amendment claims, arguing that he has failed to state a cognizable claim under either the Establishment Clause or the Free Exercise Clause. Dkt. No. 8-2 at 7-9. Defendants contend that the state law pursuant to which plaintiff is confined "was clearly enacted for secular purposes" and that the purposes of the SOTP "are clearly secular as well." *Id.* at 7-8. With respect to the particular treatment programs complained of by plaintiff, defendants maintain that dismissal is warranted because there is "no proof" that the programs "either advance or inhibit religion;" there is "no evidence" that the programs "foster any entanglement with religion;" and "no proof" of "governmental compulsion impacting upon his atheistic beliefs or practices." *Id.* at 8-9.

**\*3** The question presented by defendants' motion to dismiss is not whether plaintiff has or can adduce facts sufficient to prove his First Amendment claims. It may become clear, at summary judgment or at some later stage in the litigation, that plaintiff's claims are not adequately supported. But at this early stage, the Court must accept plaintiff's allegations as true and may not dismiss the case unless it is clear that it would be impossible for plaintiff to make out a legally cognizable claim.

Reading plaintiff's complaint liberally and accepting the well-pleaded allegations thereof as true, the Court finds that the First Amendment claim is sufficient to withstand defendants' motion to dismiss. Atheism is subject to the protections of the First Amendment. *Wallace v. Jaffree,* 472 U.S. 38, 52-53 (1985) ("the Court has unambiguously concluded that the individual freedom of conscience protected by the First Amendment embraces the right to select any religious faith or none at all."); *McChesney,* 2009 WL 607398, at *6 (Peebles, M.J.); *Alexander v. Schenck,* 118 F.Supp.2d 298, 300-02 (N.D.N.Y.2000)

Slip Copy, 2009 WL 3165830 (N.D.N.Y.)
(Cite as: 2009 WL 3165830 (N.D.N.Y.))

(Kahn, J.). Plaintiff identifies himself as an atheist, and alleges that he "has been subjected to religious practices and rituals" in the course of participating in the SOTP. Dkt. No. 1 at 2. Plaintiff claims that portions of the program are based upon Zen Buddhism and Christianity and that the SOTP "teach[es] that you have to believe in something denoted as spirituality." *Id.* at 2-3. Plaintiff alleges that he is compelled to participate in these faith-based programs in order to secure his release from CNYPC, and that this compelled participation violates his "right to believe or not as my conscience dictates." *Id.* at 3, 5. *See, e.g., Warner v. Orange County Dept. of Probation,* 115 F.3d 1068, 1075 (2d Cir.1997) (holding that because the plaintiff was sent to Alcoholics Anonymous as a condition of his probation, without offering a choice of other providers, he was "plainly" coerced in violation of the Establishment Clause); *Alexander,* 118 F.Supp.2d at 301 (prisoner ordered to attend Alcohol and Substance Abuse Treatment Program was "coerced" for purposes of First Amendment).

Defendants' motion to dismiss plaintiff's First Amendment claim is denied. Accordingly, the Court will address plaintiff's motion for preliminary injunctive relief.

The standard a court must utilize in considering whether to grant a request for injunctive relief is well-settled in this Circuit. As the Second Circuit noted in *Covino v. Patrissi,* 967 F.2d 73 (2d Cir.1992), the movant must show: (a) irreparable harm and (b) either (1) a likelihood of success on the merits of the claim or (2) sufficiently serious questions going to the merits and a balance of hardships tipping decidedly toward the party seeking injunctive relief. *Id.* at 77 (affirming district court's denial of inmate's request for preliminary injunction). Where a movant seeks relief which will alter, rather than maintain, the status quo, or which will provide him with substantially all the relief sought, the requested injunction is properly characterized as mandatory rather than prohibitory. A party seeking a mandatory injunction must make a "clear" or "substantial" showing of the likelihood of success, as well as irreparable harm should the injunction not be granted. *Jolly v. Coughlin,* 76 F.3d 468, 473-74 (2d Cir.1996).

*4 Plaintiff asks that this Court issue a preliminary injunction prohibiting defendants from mandating

participation in faith-based SOTP programs. Dkt. No. 3-2. The Court treats plaintiff's motion as seeking mandatory rather than prohibitory relief. Accordingly, plaintiff must make a clear or substantial showing of the likelihood of success on the merits of his claims.

Where a deprivation of constitutional rights is alleged, specific proof of irreparable injury is not required. *See e.g., Mitchell v.. Cuomo,* 748, F.2d 804, 806 (2d Cir.1984). For purposes of this motion, defendants do not contest plaintiff's assertion that he will suffer irreparable harm if the requested relief is not granted. *See* Dkt. No. 8-2 at 6. *See McChesney v. Hogan,* No. 9:08-CV-1186, Report-Recommendation, 2009 WL 607398, at *3 (N.D.N.Y. Dec. 23, 2008), *adopted,* 2009 WL 607398, at *7 (N.D.N.Y. Mar. 9, 2009) (Mordue, C.J.).

A party seeking injunctive relief must also demonstrate a likelihood of succeeding on the merits of a claim, or evidence that establishes sufficiently serious questions going to the merits of such a claim and a balance of hardships tipping decidedly toward the party seeking such relief. *Covino,* 967 F.2d at 77.

While the Court has found that plaintiff's allegations are sufficient to withstand defendants' Rule 12(b)(6) motion to dismiss, the present record does not contain evidence sufficient to warrant the issuance of injunctive relief. The record before the Court consists only of plaintiff's description of these programs and his claim that defendants are "proselytizing Christianity" and mandating his participation in faith-based programs in contravention of his avowed atheism. Plaintiff has not presented the Court with program materials or other evidence demonstrating a clear or substantial likelihood of success on the merits of his claim that SOTP programs such as Dialectic Behavior Therapy, "The Good Lives Model" and various Hazeldon programs are, in fact, religious in nature in First Amendment terms. *Compare Warner,* 115 F.3d at 1075 (finding a "Twelve Steps" program which "placed a heavy emphasis on spirituality and prayer" and instructed belief in "a Power greater than ourselves" was an intensely religious event) with *Boyd v. Coughlin,* 914 F.Supp. 828, 833 (N.D.N.Y.1996) (McAvoy, J.) ("This court is unaware of a controlling decision that equates spirituality with religion, such that any reference to

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3165830 (N.D.N.Y.)
(Cite as: 2009 WL 3165830 (N.D.N.Y.))

spirituality in ... [a] treatment program ... runs afoul of the First Amendment."). See *McChesney,* 2009 WL 607398, at *4. Plaintiff has also failed to support his motion with evidence that he was coerced into participating in the alleged religious exercises or rituals by virtue of his enrollment in the SOTP, and that no secular alternatives were made available to patients raising religious objections to the content of the treatment programs. *See Warner,* 115 F.3d at 1075 (recognizing that consideration of plaintiff's First Amendment claim "would be altogether different" if he had been offered a reasonable choice of therapy providers).

**\*5** Accordingly, plaintiff's motion for preliminary injunctive relief is denied.

## IV. Fifth Amendment Claims

SOTP participants seeking to advance to Phase II-IV of the program are asked to consent to polygraph and PPG examinations. Dkt. No. 1 at 3.[FN8] The Advancement Contract signed by plaintiff in December, 2008 contains the following general disclaimer: "[t]he court, your attorney, the Attorney General's Office, and other relevant participants in your commitment process have access to the information you reveal regarding your sexual offending behaviors and may use that information during the civil management process." Dkt. No. 3-3 at 7.[FN9] The section of the Advancement Contract specifically describing the required polygraph examinations includes the following statement: "The courts may choose to use any information gathered from these examinations." *Id.* at 8.[FN10] The Advancement Contract advises SOTP participants that a refusal to undergo the requested examinations "may slow or prevent advancement in SOTP phases of treatment." *Id.*

FN8. See note 5 *infra.*

FN9. Plaintiff references these documents as exhibits (C) and (D) to the complaint. Although the complaint as filed does not include these exhibits, the materials (as well as the documents identified as exhibits A and B), were filed as

exhibits in support of plaintiff's motion for injunctive relief. Both submissions were filed on the same day.

FN10. A previous version of the Advancement Contract advised that polygraph examinations "are not designed to be incriminating or to be used in court." See Dkt. No. 3-3 at 5.

The Fifth Amendment's privilege against self-incrimination, which applies to the states via the Fourteenth Amendment, provides that "[n]o person ... shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. The privilege

not only permits a person to refuse to testify against himself at a criminal trial in which he is a defendant, but also "privileges him not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings."

*Minnesota v. Murphy,* 465 U.S. 420, 426 (1984) (quoting *Lefkowitz v. Turley,* 414 U.S. 70, 77 (1973)). The right not to answer potentially incriminating questions however, is not absolute. Rather, "[t]he prohibition against compelling the testimony of a witness in any setting is predicated upon there being a real danger that the testimony might be used against the witness in later criminal proceedings." *Andover Data Services, a Div. of Players Computer, Inc. v. Statistical Tabulating Corp.* 876 F.2d 1080, 1082 (2d Cir.1989). Thus, "[i]t is ... black-letter law that a witness cannot assert a Fifth Amendment privilege not to testify 'if the testimony sought cannot possibly be used as a basis for, or in aid of, a criminal prosecution against the witness.' " *Pillsbury Co. v. Conboy,* 459 U.S. 248, 273 (1983) (Blackmun, J., concurring) (quoting *Brown v. Walker,* 161 U.S. 591, 597 (1896)).

Outside of the prison context, the Supreme Court has "described compulsion in relatively broad terms." *Ainsworth v. Risley,* 244 F.3d 209, 213 (1st Cir.2001), *vacated on other grounds,* 536 U.S. 953 (2002). The Court has held that "certain types of penalties are capable of

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3165830 (N.D.N.Y.)
(Cite as: 2009 WL 3165830 (N.D.N.Y.))

coercing incriminating testimony," including: termination of employment, the loss of a professional license, ineligibility to receive government contracts, and the loss of the right to participate in political associations and to hold public office. *McKune v. Lile,* 536 U.S. 24, 49-50 (2002) (O'Connor, J., concurring in the judgment) (citing cases). The Supreme Court has defined "compulsion" as anything that makes the exercise of the right "costly." *Spevack v. Klein,* 385 U.S. 511, 515 (1967). See *Lefkowitz v. Cunningham,* 431 U.S. 801, 808 (1977) (rejecting "the notion that citizens may be forced to incriminate themselves because it serves a governmental need.").

**\*6** Writing for a plurality of the Court in *McKune,* Justice Kennedy concluded that the setting in which the compulsion arises is an integral part of the constitutional analysis. *Id.,* 536 U.S. at 36 ("The fact that these consequences are imposed on prisoners, rather than ordinary citizens, moreover, is important in weighing respondent's constitutional claim."). Noting that "[a] broad range of choices that might infringe constitutional rights in free society fall within the expected conditions of confinement of those who have suffered a lawful conviction," *id.,* Justice Kennedy concluded that the "atypical and significant hardship" analysis articulated in *Sandin v. Connor,* 515 U.S. 472 (1995) "provides a reasonable means of assessing whether the response of prison administrators to correctional and rehabilitative necessities are so out of the ordinary that one could sensibly say they rise to the level of unconstitutional compulsion." *McKune,* 536 U.S. at 41. Concurring with the judgment reached by the *McKune* plurality, that withholding certain privileges upon an inmate's refusal to participate in a mandatory sex offender treatment program does not constitute a compulsion that encumbers the constitutional right not to incriminate oneself, Justice O'Connor wrote separately to express her opinion that the Fifth Amendment compulsion standard is broader that *Sandin's* "atypical and significant hardship" standard. *Id.,* 536 U.S. at 48 (O'Connor, J., concurring).[FN11]

> **FN11.** The inmate plaintiff in *McKune,* complained that he faced transfer to a less-desirable maximum security prison, and that he also faced the loss of his personal television set, less access to prison organizations and the gym area, a reduction in certain pay

opportunities and restricted visitation rights. *McKune,* 536 U.S. at 39. Justice Kennedy, writing for a plurality, emphasized that the decision not to participate in the Kansas Sexual Abuse Treatment Program "did not extend [the prisoner's] term of incarceration" nor did it "affect his eligibility for good-time credits or parole." *Id.,* 536 U.S. at 38.

In this case, plaintiff, a civil detainee faced with prolonged civil detention if he refuses to submit to polygraph and PPG examinations, has adequately alleged that he faces "compulsion" that is constitutionally significant even under the *Sandin* analysis utilized by the *McKune* plurality.

Notwithstanding the foregoing, however, the Court finds that plaintiff has failed to state a Fifth Amendment claim because neither polygraph nor PPG examinations violate the Fifth Amendment privilege against self-incrimination. The Second Circuit has held that requiring the use of a polygraph examination for a convicted sex offender as a condition of supervised release does not violate the privilege against self-incrimination because polygraph evidence is generally inadmissible, and the individual would be free to challenge that evidence should it be used against him in a future proceeding. *United States v. Johnson,* 446 F.3d 272, 278-80 (2d Cir.2006); *United States v. Santiago,* No. 03 Cr. 664, 2008 WL 1959548, at \*1 (S.D.N.Y. May 5, 2008); *see also United States v. Dotson,* 324 F.3d 256, 261 (4th Cir.2003) (polygraph test, "inadmissible in nearly every circumstance at trial," may be required as a condition of supervised release); *United States v. Zinn,* 321 F.3d 1084, 1090-92 (11th Cir.2003) (requiring polygraph testing as a condition of supervised release generally does not violate the Fifth Amendment). *Compare United States v. Weber,* 451 F.3d 552, 568 n. 17 (9th Cir.2006) (defendant subject to polygraph testing as requirement of supervised release retains Fifth Amendment rights "unless granted use-and-derivative-use immunity").

**\*7** The Court also find that results of PPG examinations do not implicate plaintiff's Fifth Amendment right against self-incrimination because the procedure itself is not testimonial but, rather, is an assessment of an individual's

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3165830 (N.D.N.Y.)
(Cite as: 2009 WL 3165830 (N.D.N.Y.))

physical reactions to various stimuli. *See McChesney,* 2009 WL 607398, at *5; *Walrath v. United States,* 830 F.Supp. 444, 446 (N.D.Ill.1993). Moreover, courts asked to consider the admissibility of PPG examinations have uniformly refused to do so, finding that PPG results fail to meet scientific validity prong for admissibility under *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 589-90 (1990)). *See Doe ex. rel. Rudy-Glanzer v. Glanzer,* 232 F.3d 1258, 1266 (9th Cir.2000) ("courts are uniform in their assertion that the results of penile plethysmographs are inadmissible as evidence because there are no accepted standards for this test in the scientific community."); *United States v. Powers,* 59 F.3d 1460, 1470-71 n. 13 (4th Cir.1995) (appellant "has not provided, and we have not found, any decisions acknowledging the validity of the use of penile plethysmography other than in the treatment and monitoring of sex offenders.").

Based upon the foregoing, the Court finds that the allegations of the complaint, as drafted, do not state a claim upon which relief may be granted for the violation of plaintiff's Fifth Amendment right against self-incrimination stemming from polygraph and/or PPG examinations conducted as part of the SOTP. This aspect of defendants' motion to dismiss is granted.[FN12]

    FN12. In light of this ruling, the Court need not address plaintiff's motion for injunctive relief. Defendants' claim that they are entitled to qualified immunity from damages on this claim is also moot.

**V. Qualified Immunity**

Defendants raise the affirmative defense of qualified immunity. Dkt. No. 8-2 at 11-12. "Qualified immunity is an affirmative defense that shields government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Stephenson v. Doe,* 332 F.3d 68, 76 (2d Cir.2003) (quoting *McCardle v. Haddad,* 131 F.3d 43, 50 (2d Cir.1997)).

The Second Circuit has recognized that the availability of qualified immunity may "turn[ ] on factual questions that cannot be resolved at [the motion to dismiss] stage of the proceedings." *Taylor v. Vermont Dept. of Educ.,* 313 F.3d 768, 793 (2d Cir.2002).[FN13] Thus, where the "objective reasonableness" of defendants' actions depends at least in part on what information they had regarding the substance of plaintiff's complaints, an adjudication as to the applicability of the qualified immunity affirmative defense on the basis of the pleadings alone would be premature.

    FN13. In *Stephenson,* the court advised that a "defendant should press a qualified immunity defense during pretrial proceedings so that such a claim can be disposed of by summary judgment where possible, or factual disputes material to the defense can be identified and presented to the jury." *Stephenson,* 332 F.3d at 76.

Although a factual basis for affording qualified immunity to defendants on plaintiff's First Amendment claims may arise during the course of discovery, the Court cannot at this early stage of the proceeding, accepting all of plaintiff's allegations as true, conclude that defendants are entitled to qualified immunity as a matter of law. *See Johnson v. Newburgh Enlarged Sch. Dist.,* 239 F.3d 246, 255 (2d Cir.2001); *Bailey v. Pataki,* 08 Civ. 8563, 2009 WL 2001178, at *6 (S.D.N.Y. Jul. 10.2009). Accordingly, defendants' motion to dismiss plaintiff's First Amendment claims for money damages based on qualified immunity is denied, without prejudice to renew.

**VI. Conclusion**

**\*8** Defendants' motion to dismiss the complaint pursuant to Rule 12(b)(6) for failure to state a claim upon which relief may be granted is granted in part and denied in part. The well-pleaded allegations of the complaint sufficiently allege a violation of plaintiff's First Amendment rights resulting from his required participation in faith-based treatment programs. Plaintiff's motion for preliminary injunctive relief is denied. Defendants' request for dismissal of plaintiff's First Amendment claims for money damages on qualified immunity grounds is denied, without prejudice. Plaintiff's Fifth Amendment claims are

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3165830 (N.D.N.Y.)
(Cite as: 2009 WL 3165830 (N.D.N.Y.))

dismissed, without prejudice.

WHEREFORE, on the basis of the above, it is hereby

ORDERED, that defendants' motion to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is **granted in part and denied in part** as set forth above, and it is further

ORDERED, that plaintiff's motion for preliminary injunctive relief is **denied,** and it is further

ORDERED, that defendants file an answer to complaint **no later than October 31, 2009,** and it is further

ORDERED, that the Clerk serve a copy of this Memorandum-Decision and Order on the parties.

IT IS SO ORDERED.

N.D.N.Y.,2009.
Decker v. Hogan
Slip Copy, 2009 WL 3165830 (N.D.N.Y.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.



--- F.Supp.2d ----, 2009 WL 3429791 (W.D.N.Y.)
(Cite as: 2009 WL 3429791 (W.D.N.Y.))

Only the Westlaw citation is currently available.

United States District Court,
W.D. New York.
Darwin J. FIFIELD, Sr., Plaintiff,
v.
Mrs. D. EATON, Defendant.
No. 07-CV-6521L.

Oct. 20, 2009.

**Background:** Inmate sued senior counselor at correctional facility under § 1983, claiming that during his incarceration there the counselor insisted that he incriminate himself as to uncharged criminal activity or else face the loss of parole opportunities and good time credit, in violation of his Fifth and Fourteenth Amendment rights. Counselor moved to dismiss.

**Holdings:** The District Court, David G. Larimer, J., held that:

(1) inmate had no liberty interest in parole or good time credit;

(2) inmate failed to state a claim under the Fifth Amendment Self-Incrimination Clause; and

(3) in any event, the counselor was entitled to qualified immunity.

Motion granted.

West Headnotes

**[1] Constitutional Law 92** 🗝 **4829**

92 Constitutional Law
   92XXVII Due Process
      92XXVII(H) Criminal Law

         92XXVII(H)11 Imprisonment and Incidents Thereof
            92k4829 k. Reduction of Term; Good-Time Credits. Most Cited Cases

**Constitutional Law 92** 🗝 **4838**

92 Constitutional Law
   92XXVII Due Process
      92XXVII(H) Criminal Law
         92XXVII(H)12 Other Particular Issues and Applications
            92k4838 k. Parole. Most Cited Cases

**Pardon and Parole 284** 🗝 **46**

284 Pardon and Parole
   284II Parole
      284k45 Authority or Duty to Grant Parole or Parole Consideration
         284k46 k. Parole as Right or Privilege. Most Cited Cases

**Prisons 310** 🗝 **245(4)**

310 Prisons
   310II Prisoners and Inmates
      310II(F) Duration of Confinement
         310k243 Good Conduct or Other Earned Credits Against Sentence
            310k245 Right to Credits; Eligibility and Entitlement
               310k245(4) k. Participation in Treatment Programs. Most Cited Cases
Inmate had no liberty interest in parole or good time credit allegedly denied as a result of his termination from a sex offender treatment program, thus defeating his claim of a Due Process violation. U.S.C.A. Const.Amend. 14.

**[2] Constitutional Law 92** 🗝 **3873**

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2009 WL 3429791 (W.D.N.Y.)
(Cite as: 2009 WL 3429791 (W.D.N.Y.))

**92** Constitutional Law
    **92XXVII** Due Process
          **92XXVII(B)** Protections Provided and Deprivations Prohibited in General
            **92k3868** Rights, Interests, Benefits, or Privileges Involved in General
              **92k3873** k. Liberties and Liberty Interests. Most Cited Cases
Protected liberty interest may arise from the Due Process Clause itself, or from an expectation or interest created by state law or administrative regulations. U.S.C.A. Const.Amend. 14.

**[3] Civil Rights 78 ☞ 1311**

**78** Civil Rights
    **78III** Federal Remedies in General
        **78k1306** Availability, Adequacy, Exclusivity, and Exhaustion of Other Remedies
            **78k1311** k. Criminal Law Enforcement; Prisons. Most Cited Cases
To the extent that an inmate claimed that he was barred from any already-earned good time credit as a result of his expulsion from a sex offender treatment program, § 1983 was not the proper vehicle to seek redress, but rather, a writ of habeas corpus was his sole recourse. 42 U.S.C.A. § 1983.

**[4] Criminal Law 110 ☞ 393(1)**

**110** Criminal Law
    **110XVII** Evidence
        **110XVII(I)** Competency in General
            **110k393** Compelling Self-Incrimination
              **110k393(1)** k. In General. Most Cited Cases
Inmate failed to state a claim against a counselor at a correctional facility under the Fifth Amendment Self-Incrimination Clause where the inmate conceded that he did not make any incriminating statements and did not allege that the counselor ever used, sought to use, or could have used any incriminating statement against him in a criminal proceeding. U.S.C.A. Const.Amend. 5.

**[5] Civil Rights 78 ☞ 1376(7)**

**78** Civil Rights
    **78III** Federal Remedies in General
        **78k1372** Privilege or Immunity; Good Faith and Probable Cause
            **78k1376** Government Agencies and Officers
              **78k1376(7)** k. Prisons, Jails, and Their Officers; Parole and Probation Officers. Most Cited Cases
Law governing inmate's claim that a counselor violated his Fifth Amendment right against self-incrimination and his right to due process under the Fourteenth Amendment by insisting, as part of a sex offender treatment program, that he incriminate himself as to uncharged criminal activity was sufficiently unsettled to entitle the counselor to qualified immunity from liability in the inmate's § 1983 suit. U.S.C.A. Const.Amends. 5, 14; 42 U.S.C.A. § 1983.

**[6] Civil Rights 78 ☞ 1376(2)**

**78** Civil Rights
    **78III** Federal Remedies in General
        **78k1372** Privilege or Immunity; Good Faith and Probable Cause
            **78k1376** Government Agencies and Officers
              **78k1376(2)** k. Good Faith and Reasonableness; Knowledge and Clarity of Law; Motive and Intent, in General. Most Cited Cases
Doctrine of qualified immunity shields government officials from liability for civil damages where their performance of their discretionary duties does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

**[7] Officers and Public Employees 283 ☞ 119**

**283** Officers and Public Employees
    **283III** Rights, Powers, Duties, and Liabilities
        **283k119** k. Actions by or Against Officers and Employees. Most Cited Cases
Once a defendant claims the affirmative defense of qualified immunity, the burden shifts to the plaintiff to demonstrate that the defendant is not entitled to qualified immunity.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2009 WL 3429791 (W.D.N.Y.)
(Cite as: 2009 WL 3429791 (W.D.N.Y.))

**[8] Civil Rights 78 🗝️    1376(1)**

78 Civil Rights
    78III Federal Remedies in General
        78k1372 Privilege or Immunity; Good Faith and Probable Cause
            78k1376 Government Agencies and Officers
                78k1376(1) k. In General. Most Cited Cases

**Civil Rights 78 🗝️    1376(2)**

78 Civil Rights
    78III Federal Remedies in General
        78k1372 Privilege or Immunity; Good Faith and Probable Cause
            78k1376 Government Agencies and Officers
                78k1376(2) k. Good Faith and Reasonableness; Knowledge and Clarity of Law; Motive and Intent, in General. Most Cited Cases

In determining whether qualified immunity applies, court can initially consider whether the facts alleged show the defendant's conduct violated a constitutional right, or consider the second prong, whether the right was such that a reasonable official would know of it.

**[9] Civil Rights 78 🗝️    1376(2)**

78 Civil Rights
    78III Federal Remedies in General
        78k1372 Privilege or Immunity; Good Faith and Probable Cause
            78k1376 Government Agencies and Officers
                78k1376(2) k. Good Faith and Reasonableness; Knowledge and Clarity of Law; Motive and Intent, in General. Most Cited Cases

For purposes of a qualified immunity defense, if the plaintiff establishes that a constitutional violation occurred, the court may examine whether the right was clearly established in light of the specific context of the case, not as a broad general proposition.

**[10] Civil Rights 78 🗝️    1376(2)**

78 Civil Rights
    78III Federal Remedies in General
        78k1372 Privilege or Immunity; Good Faith and Probable Cause
            78k1376 Government Agencies and Officers
                78k1376(2) k. Good Faith and Reasonableness; Knowledge and Clarity of Law; Motive and Intent, in General. Most Cited Cases

For purposes of a qualified immunity defense, plaintiff may show that a right is clearly established by: (1) identifying analogous case law establishing it; or (2) showing that the conduct in question was so egregious that no reasonable person could have believed that it would not violate clearly established rights.

**[11] Civil Rights 78 🗝️    1432**

78 Civil Rights
    78III Federal Remedies in General
        78k1425 Questions of Law or Fact
            78k1432 k. Defenses; Immunity and Good Faith. Most Cited Cases

For purposes of a qualified immunity defense, whether a right was "clearly established" at the pertinent time is generally a question of law, but whether an official would have reasonably believed that his conduct did not violate a clearly established right is a mixed question of law and fact which requires a particularized focus on the salient facts of the case.

**[12] Officers and Public Employees 283 🗝️    119**

283 Officers and Public Employees
    283III Rights, Powers, Duties, and Liabilities
        283k119 k. Actions by or Against Officers and Employees. Most Cited Cases

For purposes of a qualified immunity defense, where there is no dispute as to the material facts, the question of reasonableness may be appropriately determined by the court.

Darwin J. Fifield, Sr., Malone, NY, pro se.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2009 WL 3429791 (W.D.N.Y.)
(Cite as: 2009 WL 3429791 (W.D.N.Y.))

Thomas J. Kidera, New York State Attorney General's Office, Rochester, NY, for Defendant.

*DECISION AND ORDER*

DAVID G. LARIMER, District Judge.

**\*1** Plaintiff Darwin J. Fifield ("Fifield") brings this action against Deborah Eaton, a senior counselor at the Gowanda Correctional Facility ("Gowanda"). Fifield alleges that during his incarceration at Gowanda, the defendant insisted that Fifield incriminate himself as to uncharged criminal activity or else face the loss of parole opportunities and "good time" credit, in violation of his Fifth and Fourteenth Amendment rights and 42 U.S.C. § 1983. U.S. CONST. Amend. V, XIV.

The defendant now moves to dismiss Fifield's complaint pursuant to Fed. R. Civ. Proc. 12(c), on the grounds that plaintiff has failed to allege a violation of his Fifth Amendment rights, cannot demonstrate a liberty interest in good time credit not already earned, and in any event cannot overcome the defendant's affirmative defense of qualified immunity. (Dkt. # 21). For the reasons set forth below, the defendant's motion is granted, and the complaint is dismissed.

*DISCUSSION*

**I. Motion to Dismiss**

In deciding a motion for judgment on the pleadings pursuant Rule 12(c) of the Federal Rules of Civil Procedure, "[courts] apply the same standard as that applicable to a motion under Rule 12(b)(6). Under that test, a court must accept the allegations contained in the complaint as true, and draw all reasonable inferences in favor of the non-movant." *Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir.1994), *citing Ad-Hoc Comm. of Baruch Black & Hispanic Alumni Ass'n v. Bernard M. Baruch College*, 835 F.2d 980, 982 (2d Cir.1987). Nonetheless, "a plaintiff's obligation ... requires more than labels and

conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). *See e.g.*, *Ashcroft v. Dept. of Corrections*, 2007 WL 1989265, 2007 U.S. Dist. LEXIS 49079 (W.D.N.Y.2007) (discussing and applying the *Twombly* standard).

**II. Factual Background**

In 2004, Fifield pled guilty to rape in the third degree (N.Y. Penal Law § 130.25[2] ) and attempted use of a child in a sexual performance (N.Y. Penal Law §§ 110.00, 263.05); he was sentenced to an indeterminate term of imprisonment of two-and-one-third to seven years. (Dkt. # 16 at 1). Fifield was received into custody on March 23, 2004, and was subsequently transferred to Gowanda by the Department of Correctional Services, in order to participate in the facility's Sex Offender Treatment Program (the "Program"). Enrollment in the Program required Fifield to complete intake forms discussing the conduct that gave rise to his conviction. During the intake process, Fifield consistently disputed the victim's account of forcible rape, contending that the victim's participation in the underlying sexual activity was entirely voluntary and uncoerced, and that in any event, he had only pled guilty to statutory rape, the elements of which do not necessarily require the use of force. *Id.*

**\*2** As a result of Fifield's refusal to "admit" to the commission of forcible rape as described in his victim's statement to police, defendant and other correction counselors terminated Fifield's participation in the Program two days after it began, on December 12, 2006. *Id.* at 2. Defendant referred Fifield to the Sex Offender Review Committee ("Committee"), with the recommendation that Fifield be terminated from the Program, due to his continued assertions that the victim's statement was untrue. The Committee adopted the counselors' recommendation, and terminated Fifield from the Program. Fifield's subsequent appeals of the Review Committee's decision, and grievances against the defendant, were denied.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2009 WL 3429791 (W.D.N.Y.)
(Cite as: 2009 WL 3429791 (W.D.N.Y.))

On or about March 13, 2007, Fifield appeared before the Parole Board and was denied discretionary release because of, inter alia, his failure to complete the Program. *Id.* at 3. Thereafter, while incarcerated at Wyoming Correctional Facility, Fifield was denied good time credit for the same reason. *Id.*

Fifield claims that the defendant, through the Program's policy requiring assumption of responsibility for sex offenses, violated his Fifth Amendment right against self-incrimination by requiring him to falsely state that he coerced or otherwise forced his sixteen-year-old victim to engage in sexual activities against her will, something which was not a necessary element of the crimes for which he was convicted, and which Fifield denies having done. He further claims that his termination from the Program has negatively impacted his potential release date by depriving him of the opportunity to gain parole or good time credit, in violation of his due process rights under the Fourteenth Amendment.

### III. Plaintiff's Fourteenth Amendment Claim

[1] Defendant urges that Fifield's Fourteenth Amendment claim should be dismissed, because Fifield has no liberty interest in the parole or good time credit he alleges he was denied as a result of his termination from the Program.

[2] The Fourteenth Amendment prohibits the government from depriving citizens of life, liberty or property without due process of law. *See e.g., Wilkinson v. Austin,* 545 U.S. 209, 125 S.Ct. 2384, 162 L.Ed.2d 174 (2005). A protected liberty interest may arise from the Due Process Clause itself, or from an expectation or interest created by state law or administrative regulations. *Id.,* 545 U.S. 209 at 221-222, 125 S.Ct. 2384.

It is well-settled that an inmate has no constitutionally protected liberty interest in parole, or other conditional release from prison, prior to the expiration of a valid sentence. *See Greenholtz v. Inmates of Nebraska Penal and Corr. Complex,* 442 U.S. 1, 7, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979); *Barna v. Travis,* 239 F.3d 169, 171 (2d Cir.2001). The Second Circuit has also determined

that an inmate has no constitutional right to discretionary good time release, or to participation in prison programs which might expedite release. *See* N.Y. Correct. Law § 803 (outlining New York's discretionary good time credit program); *Abed v. Armstrong,* 209 F.3d 63, 67 (2d Cir.2000) (where good time credit is a discretionary matter, inmate has no liberty interest in the opportunity to earn good time credit); *Johnson v. Baker,* 108 F.3d 10, 11 (2d Cir.1997) (inmate who was removed from a Sex Offender Program and denied admission to a family visitation program because he refused to admit to the conduct of which he was convicted has "no basis for [an] equal protection claim," even where his refusal was made in order to preserve his then-pending appeal). *See also Lighthall v. Vadlamudi,* 2006 WL 721568 at *14-*15, 2006 U.S. Dist. LEXIS 74734 at *45-*47 (N.D.N.Y.) (Report-Recommendation) (inmates have no protected liberty interest in merit time, or programs awarding good time credit), *adopted,* 2006 U.S. Dist. LEXIS 74737 (N.D.N.Y.2006). Accordingly, plaintiff's due process claim relating to lost opportunities to earn good time credits must be dismissed.

*3[3] The breadth of Fifield's good time credit allegations is unclear, but to the extent that Fifield claims that he was barred from any *already-earned* good time credit as a result of expulsion from the Program, "[Section] 1983 is not the proper vehicle ... to seek redress for [an] alleged good-time credit deprivation [and] a writ of habeas corpus [i]s a prisoner's sole recourse in challenging the procedures used to deny him good-time credits." *Ebron v. Lantz,* 2006 WL 18827 at *3, 2006 U.S. Dist. LEXIS 610 at *8-*9 (D.Conn.2006), *citing Edwards v. Balisok,* 520 U.S. 641, 117 S.Ct. 1584, 137 L.Ed.2d 906 (1997).

### IV. Plaintiff's Fifth Amendment Claim

[4] The Fifth Amendment Self-Incrimination Clause, applicable to the states pursuant to the Fourteenth Amendment, provides that no person "shall be compelled in any criminal case to be a witness against himself." *Malloy v. Hogan,* 378 U.S. 1, 2, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964).

For several reasons, Fifield's claim against Correction

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2009 WL 3429791 (W.D.N.Y.)
(Cite as: 2009 WL 3429791 (W.D.N.Y.))

Counselor Eaton must be dismissed. First of all, Fifield concedes that he did not make any incriminating statements and does not allege that the defendant ever used, sought to use, or could have used any incriminating statement against him in a criminal proceeding. In this posture, Fifield has failed to sufficiently allege a violation of his rights under the Fifth Amendment. *See Chavez v. Martinez,* 538 U.S. 760, 766-767, 123 S.Ct. 1994, 155 L.Ed.2d 984 (2003) ("mere coercion [to self-incriminate] does not violate the text of the Self-Incrimination Clause absent use of the compelled statements in a criminal case").

**V. Qualified Immunity**

[5] Even if Fifield's allegations did state valid Fifth or Fourteenth Amendment claims, I find that the law governing the constitutionality of sex offender programs like the one confronted here is not sufficiently clear or uniform for Fifield to prevail, because the unsettled nature of the governing law entitles the defendant to qualified immunity.

[6] The doctrine of qualified immunity shields government officials from liability for civil damages where their performance of their discretionary duties does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). It is a two-pronged analysis.

[7][8][9][10] Once a defendant claims the affirmative defense of qualified immunity, the burden shifts to the plaintiff to demonstrate that the defendant is not entitled to qualified immunity. *See Baker v. Gerould,* 598 F.Supp.2d 357, 366 (W.D.N.Y.2009). In determining whether qualified immunity applies, the Court can initially consider whether the facts alleged show the defendant's conduct violated a constitutional right, or consider the second prong, whether the right was such that a reasonable official would know of it. *Pearson v. Callahan,* --- U.S. ----, 129 S.Ct. 808, 818, 172 L.Ed.2d 565 (2009) (holding that although "the sequence set forth in *Saucier*[FN1] is often appropriate, it should no longer be regarded as mandatory. The judges of the district courts ... should be permitted to

exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first"). If the plaintiff establishes that such a violation occurred, the court may examine "whether the right was clearly established ... in light of the specific context of the case, not as a broad general proposition." *Saucier,* 533 U.S. 194 at 201, 121 S.Ct. 2151. A plaintiff may show that a right is "clearly established" by: (1) identifying analogous case law establishing it; or (2) showing that the conduct in question was so egregious that no reasonable person could have believed that it would not violate clearly established rights. *See Hope v. Pelzer,* 536 U.S. 730, 739 (2002); *United States v. Lanier,* 520 U.S. 259, 265, 117 S.Ct. 1219, 137 L.Ed.2d 432 (1997).

**\*4** [11][12] Whether a right was "clearly established" at the pertinent time is generally a question of law. *See Crawford-El v. Britton,* 523 U.S. 574, 589, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998); *Mitchell v. Forsyth,* 472 U.S. 511, 528, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985); *Harlow,* 457 U.S. 800 at 818, 102 S.Ct. 2727. However, whether a official would have reasonably believed that his conduct did not violate a clearly established right, is a mixed question of law and fact which requires a particularized focus on the salient facts of the case. *Kerman v. City of New York,* 374 F.3d 93, 109 (2d Cir.2004);*Lennon v. Miller,* 66 F.3d 416, 422 (2d Cir.1995). Where, as here, there is no dispute as to the material facts, the question of reasonableness may be appropriately determined by the Court. *See Kerman,* 374 F.3d at 109;*Lennon,* 66 F.3d at 421.

Upon initial examination of the legal issues presented, I note that the Second Circuit has suggested that participation in prison programs may be conditioned on an inmate's disclosure of criminal conduct, so long as denial of program participation is "imposed for failure to answer a relevant inquiry and not for refusal to give up a constitutional right." *Johnson,* 108 F.3d 10 at 11 (inmate who was removed from a Sex Offender Program and denied admission to a family visitation program because he refused to admit to the conduct of which he was convicted has no basis for Fifth or Fourteenth Amendment claims, even where his refusal was made in order to preserve his then-pending appeal). Nonetheless, the Circuit has explicitly declined to address whether a denial of good time credits based upon an inmate's refusal to

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2009 WL 3429791 (W.D.N.Y.)
(Cite as: 2009 WL 3429791 (W.D.N.Y.))

disclose criminal conduct amounts to a constitutional violation. *See United States v. Jones,* 299 F.3d 103, 111 n. 2 (2d Cir.2002) ("the Supreme Court in *Lile* was unable to reach a conclusive decision 'on the question of what standard to apply when evaluating compulsion for the purposes of the Fifth Amendment privilege against self-incrimination in a prison setting' ... [w]e need not take any position on this specific question here, and we do not"), *citing McKune v. Lile,* 536 U.S. 24, 49-50, 122 S.Ct. 2017, 153 L.Ed.2d 47 (2002).

Furthermore, there is no clear consensus among other federal courts concerning this issue. *See Fournier v. Corzine,* 2007 WL 2159584 at *16 n. 18, 2007 U.S. Dist. LEXIS 54110 at *48 n. 18 (D.N.J.2007) (collecting cases, and noting that "[t]he Circuit Courts have taken a range of positions with respect to the issue whether the Self-Incrimination Clause is violated by loss of eligibility for good time credits or parole based upon failure to admit either the crime of conviction, or, in connection with a rehabilitation program, uncharged sexual conduct which may be criminal"); *Martin v. Dowling,* 2006 WL 2711643 at *4 n. 4, 2006 U.S. Dist. LEXIS 67711 at *12 n. 4 (D.N.J.2006) (same); *Donhauser v. Goord,* 314 F.Supp.2d 119, 124, 129 n. 8 (N.D.N.Y.2004) (declining to "set forth the concise and definitive standard for adjudging Fifth Amendment compulsion challenges by prisoners" due to the fact that this issue is "an already confused area of jurisprudence," and noting that "the 'atypical and significant hardships' standard [articulated in *McKune v. Lile* ] was not adopted by a majority of the Supreme Court, and in fact has not been embraced at a noticeable level by any federal court").

**\*5** Therefore, upon examination of the second prong of the qualified immunity test, I find that a reasonable official would not necessarily have reasonably believed that the facts here amount to a constitutional violation. As the district court for the Northern District of New York noted in analyzing a sex offender treatment program conditioned on prisoners' disclosure of criminal conduct in exchange for the opportunity to earn good time credit, "[e]ven though a prisoner's right to be free from compelled self-incrimination has been long established ... the standard defining that right ... has not and is not ... Courts have not reached a consensus on the proper legal parameters of such right; [government officials] should not

[be] expected to solve the riddle either." *Donhauser,* 314 F.Supp.2d 119 at 139. Thus, even assuming that the opportunity to participate in the Program and to earn parole and/or good time credits are constitutionally protected liberty interests, I find that an inmate's right to do so without being compelled to make potentially incriminating statements about the conduct for which he was convicted is by no means well-settled, and not a right with which the defendant should have been expected to be familiar.

### *CONCLUSION*

For the foregoing reasons, I find that there are no material issues of fact, and that defendant is entitled to judgment as a matter of law. Accordingly, defendant's motion to dismiss the complaint (Dkt. # 21) is granted, and the complaint is dismissed in its entirety, with prejudice. Plaintiff's outstanding motion for additional discovery (Dkt. # 45) is denied as moot.

IT IS SO ORDERED.

FN1.*Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001).

W.D.N.Y.,2009.
Fifield v. Eaton
--- F.Supp.2d ----, 2009 WL 3429791 (W.D.N.Y.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.